**In re William L. CANNON, Debtor.**

**Bankruptcy No. 88–04055.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Oct. 26, 1988.

John E. Venn, Jr., Gulf Breeze, Fla., for Debtor.

Charles M. Wynn, Marianna, Fla., Trustee.

## MEMORANDUM OPINION ON TRUSTEE'S OBJECTION TO CONFIRMATION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on confirmation of the debtor's Chapter 12

plan of reorganization. The trustee objected to confirmation on several grounds, all but one of which were resolved at the confirmation hearing. The single remaining objection is to the provisions in the plan which allow the debtor to pay all of his secured creditors directly and thereby avoid a trustee's commission on those payments.[1] The debtor, the trustee, and the United States trustee have all argued and briefed the issue for the Court. Having considered the arguments and memoranda of the parties and being otherwise advised in the law, the Court concludes that the debtor may act as disbursing agent under the plan to the extent the Court so allows; however, all payments under the plan are subject to the trustee's commission. The Court has the discretion to determine which payments, if any, the debtor may disburse. Because a standing Chapter 12 trustee has not been appointed pursuant to 28 U.S.C. § 586(b), the Court is required to fix a reasonable trustee's fee not to exceed five percent (5%) upon all payments under the plan as provided in 11 U.S.C. § 326(b).

The debtor has four secured creditors all of which he proposes in his plan to pay directly. The NCNB National Bank note in the amount of $57,063.82 is secured by a first mortgage on the debtor's homestead. The debtor proposes to amortize the NCNB claim over thirty (30) years at ten percent (10%) interest. The NCNB will be paid $6,053.29 per year in consecutive, equal monthly installments. The Farmers Home Administration (FmHA) has a second mortgage on 110 acres in Covington, Alabama, and 180 acres in Santa Rosa County, Florida. The FmHA also has a first lien on all of the debtor's equipment. The FmHA is owed a total of $480,000; however, its claims will be valued, and the debtor will pay the allowed amount of each secured claim in annual installments over a fifteen year period with interest at eleven percent

(11%) per year. The Small Business Administration (SBA) has a first mortgage on the 110 acres in Covington, Alabama, and the 180 acres in Santa Rosa County, Florida, and a second mortgage on the debtor's homestead. The SBA is owed $121,062.48 which will be paid in equal, annual installments over fifteen years at the contract rate of interest of three percent (3%) per year. Eloise and Curtis Cannon, are secured by a first lien on crops. Their claim in the amount of $15,700.00 is to be paid in five equal, annual installments of $4,247.95 including interest computed at eleven percent (11%) per year. The total proposed payments to secured creditors comes to $27,644.64 per year. The plan also proposes to pay the trustee approximately $25,000 per year for distribution to unsecured creditors.

In those districts where the Chapter 12 caseload does not warrant the appointment of a standing trustee, the Court may fix a reasonable trustee's fee pursuant to 11 U.S.C. § 326(b) not to exceed five percent (5%) of all payments under the plan. Payments to a creditor or class of creditors are considered to be "under the plan" whenever the jurisdiction of the court is invoked to modify or alter a creditor's rights through the plan. *In re Hagensick*, 73 B.R. 710 (Bankr.N.D.Iowa 1987); *In re Rott*, 73 B.R. 366 (Bankr.D.N. D.1987); *In re Citrowske*, 72 B.R. 613 (Bankr.D.Minn.1987); *See Matter of Foster*, 670 F.2d 478 (5th Cir.1982). The plan modifies the rights of all creditors in this case; consequently, all payments, whether they are disbursed by the debtor or the trustee, are under the plan and subject to the trustee's fee. The trustee has requested a five percent (5%) fee on all payments under the plan. Five percent (5%) is the maximum fee which may be fixed under

---

**1.** The Court has recently decided this issue in the Chapter 13 context in the case of *In re Burkhart*, 94 B.R. 724 (Bankr.N.D.Fl.1988). The relevant chapter 12 provisions are similar or identical in some instances to those in chapter 13; however, there is a significant difference between these cases in that the chapter 12 case load had not warranted the appointment of a

standing chapter 12 trustee. Only thirty-four chapter 12 cases have been filed in this district since the effective date of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, in November, 1986. A standing chapter 13 trustee has been appointed in this district pursuant to 28 U.S.C. § 586(b).

§ 326(b), and it may not be justified in every case.

In *In re Crum*, 85 B.R. 878 (Bankr.N.D. Fl.1988) (citing *In re Erickson Partnership*, 83 B.R. 725 (D.S.D.1988)), this Court briefly addressed the question of whether a Chapter 12 debtor may disburse payments under the plan directly to secured creditors and concluded, contrary to the position taken by both the trustee and the United States trustee in this case, that direct payments to secured creditors are permissible. The Bankruptcy Code clearly permits a Chapter 12 debtor to make payments directly to secured creditors. Section 1222(a)(1) provides that: "[t]he plan shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee *as is necessary for the execution of the plan.*" (emphasis added). 11 U.S.C. § 1222(a)(1). Section 1226(c) provides that: *"[e]xcept as otherwise provided in the plan or in the order confirming the plan,* the trustee shall make payments to creditors under the plan." (emphasis added). 11 U.S.C. § 1226(c). The analogous Chapter 13 provisions, 11 U.S.C. §§ 1322(a)(1) and 1326(c), are identical, and as explained by the Bankruptcy Court in *Erickson*, "the courts have long recognized the debtor's ability to make direct payments" in Chapter 13 cases. *In re Erickson Partnership*, 77 B.R. 738, 746 (Bankr.D.S.D.1987), *aff'd*, 83 B.R. 725 (D.S.D.1988); *Burkhart, supra* at note 1 (citing *Matter of Foster, supra*). Sections 1222(a)(1) and 1226(c) leave little uncertainty that the Chapter 12 debtor, like his Chapter 13 counterpart, may make direct payments to creditors under the plan. Any lingering doubts were erased by Congress in Chapter 12, at least as to payments to secured creditors. Section 1225(a)(5)(B)(ii) provides that:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . . .

(ii) the value, as of the effective date of the plan, of property to be distributed *by the trustee or the debtor* under the plan on account of such claim is not less than the allowed amount of such claim. (emphasis added).

11 U.S.C. § 1225(a)(5)(B)(ii). The parallel Chapter 13 provision, section 1325(a)(5)(B)(ii), does not include the underlined language. By the addition of this new language to § 1225, Congress has specifically provided for direct payments by the debtor to secured creditors in Chapter 12 cases.

■ Having reached the conclusion that direct payments by the debtor are permissible in Chapter 12, the question becomes "when and under what circumstances should the Court permit the debtor to do so?" There are no express limitations in the Bankruptcy Code on the debtor's prerogative to make direct payments. That, of course, does not suggest that the debtor has unbridled discretion in such matters. The plan, including any provision for direct payments, must comply with the requirements of Chapter 12 as well as all other applicable provisions of title 11, and the plan must be proposed in good faith. 11 U.S.C. §§ 1225(a)(1), (3). In holding that the debtor was permitted to make direct payments, the Bankruptcy Court in *Erickson* enumerated the following limiting factors:

... Chapter 12 of the Bankruptcy Code permits a "family farmer" debtor (farmer-debtor) to directly pay creditors under his plan of reorganization, and not through the Trustee, when ... b) the creditor's approved claim is modified, *if:* i) that creditor's claim receives the same treatment as other claims within a particular class of creditors, unless that creditor agrees to less favorable treatment; ii) that creditor's claim is not "preferred" to other "unsecured" creditors similarly situated, thereby unfairly discriminating against those creditors; iii) that creditor has established a self-monitor and remedy device in the event of plan obligation failure; and iv) that creditor does not object to direct payment.

*Erickson,* 77 B.R. at 745. Typically secured creditors are separately classified, and the debtor may provide for direct payments to one secured creditor while paying another through the trustee. Unsecured creditors may be classified in one or more classes, but the plan may not unfairly discriminate against any class of unsecured creditors. 11 U.S.C. § 1222(b)(1). Direct payments to a class of unsecured creditors would in most instances not comply with § 1222(b)(1). Furthermore, § 1225(a)(4), dealing with the treatment of unsecured claims, does not contain the language found in § 1225(a)(5)(B)(ii) which expressly allows property to be distributed under the plan "by the trustee or the debtor" to secured creditors. In *Erickson* the District Court held that, in differentiating between the sections, "Congress did not intend for Chapter 12 debtors to make direct payments on unsecured claims," and this Court concurs with that decision. *Erickson,* 83 B.R. at 727.

■ Another concern is that direct payments may place a creditor at an unfair disadvantage. Most lending institutions have internal systems and procedures to receive and monitor the debtor's payments, and, in the event of default, they generally have the resources available to exercise their remedies without the assistance of a trustee. As a result most institutional lenders do not object to direct payments, and they have not objected in this case. The Court will, therefore, allow the debtor to make direct payments to the NCNB, FmHA, and SBA. Non-institutional lenders, whether secured or unsecured, commonly do not have such resources at their immediate disposal; hence, they need the added protection of being paid through the trustee. Eloise and Curtis Cannon are individual lenders. The plan provides payment of the value of their secured claim; however, they will not retain a lien on any of the debtor's assets. Due to their tenuous position, the Court will direct payments on their claim to be made to the trustee during the three year pendency of the plan.

■ The Chapter 12 trustee will not be frustrated in the performance of his duties,

as has been asserted by the United States trustee, if the debtor is allowed to disburse payments to secured creditors. The trustee's duties, in so far as payments to creditors are concerned, require that he: 1) ensure that the debtor commences making payments required by a confirmed plan, 2) make the payments to creditors called for in the plan except as otherwise provided in the plan or the order confirming the plan, and 3) monitor the debtor's performance under the plan. 11 U.S.C. § 1202(b)(4); 11 U.S.C. § 1226(c); 11 U.S.C. § 1208(c)(6); *see* 5 King, *Collier on Bankruptcy* ¶ 1302.01[A][xiii] (15th ed. 1988). The debtor is required to submit monthly operating reports to the trustee which should reflect all payments made under a confirmed plan; therefore, the trustee may both ensure that payments are commenced and continue to monitor payments without actually having received them.

Ideally, the trustee should receive a reasonable fee commensurate with the work performed in each case. As a practical matter that goal is frequently difficult to achieve. The trustee may expend a great deal of time, for example, in a case that is ultimately dismissed or converted prior to confirmation with no fee being due. On the other hand, the trustee may receive a windfall if the total payments to creditors under the plan, and thus the percentage fee, are substantial in comparison to the actual work performed by the trustee. Due to the sizeable amounts of land, equipment, and associated secured debt usually involved in a farmer case, the potential for the trustee's fees to be disproportionately large in comparison to the trustee's time and effort is real. The total proposed payments under the plan come to $157,933.92. A five percent (5%) fee on all payments as requested by the trustee amounts to $7,896.70 over the three year life of the plan. In terms of the time and effort the trustee has been and will be required to expend, this is probably an average Chapter 12 case. The trustee has: (1) filed an objection to the debtor's motion to obtain unsecured credit on the basis that the trustee's fees would be primed by the proposed super-priority administrative claim to

be given to the lender; (2) conducted the § 341 meeting of creditors; (3) filed an objection to confirmation and attended the confirmation hearing; and (4) filed a brief on the immediate issue under consideration. Assuming the plan is confirmed, the trustee will be required to receive and disburse annual payments as called for in the plan. Based these facts, the Court can not conclude that a fee of approximately $8,000 would be justified.

■ A balance must be struck, within the parameters of §§ 326 and 330 of the Bankruptcy Code, between the need to adequately compensate, and thus retain, qualified trustees and the Court's responsibility to see that the rehabilitative objectives of Chapter 12 are achieved. *Erickson*, 77 B.R. at 752. While the trustee is certainly entitled to receive fair compensation, we must remember that the purposes of Chapter 12 are the rehabilitation of the debtor and the payment of creditors, not the enrichment of the trustee. The Court has considered several approaches and has concluded that, in computing the Chapter 12 trustee's fee, some distinction should be made between payments made by the trustee and those made by the debtor to secured creditors.[2] Accordingly, the fee on payments made by the trustee will be computed at five percent (5%) while the fee on payments made directly by the debtor to secured creditors will be computed at two and one-half percent (2½%). Using this formula, the trustee will receive a fee of $6,141.94 based on proposed plan payments.

In summary, while the Bankruptcy Code permits direct payments by the debtor under a Chapter 12 plan, the Court must exercise its discretion to determine on a case by case basis specifically which payments, if any, the debtor should be allowed to make. The order confirming the debtor's plan herein will provide that the debtor may make payments directly to the NCNB, FmHA, and SBA. All other payments under the plan must be paid to the trustee.

The Court will continue to use the above fee schedule as a guide in all Chapter 12 cases. If it appears in a particular case that the trustee's fee is inequitable, the trustee and the debtor may negotiate a different fee or request that the Court set an appropriate fee.

A separate order of confirmation will be entered in accordance herewith.

DONE AND ORDERED.

---

**2.** Where a standing trustee has been appointed, the trustee's fee is paid only on the payments received by the trustee; therefore, the trustee does not receive any fee on payments disbursed by the debtor. *See* 28 U.S.C. § 586(e)(2); *In re Burkhart, supra* note 1.