**In re Paul & Eloise GOLDEN, Debtors.**

**Bankruptcy No. 91–04336.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Aug. 6, 1991.

John E. Venn, Jr., Gulf Breeze, Fla., for debtor.

Walter W. Kelly, Albany, Ga., Trustee.

### ORDER ON OBJECTIONS TO CONFIRMATION OF CHAPTER 12 PLAN

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on July 25, 1991, for confirmation of the Chapter 12 farm plan filed by the debtors, Paul and Eloise Golden. Prior to hearing, a number of objections to confirmation were filed, however, the debtors amended their plan to satisfy the objections filed by the various creditors. At the hearing on confirmation, the debtors presented evidence in support of their plan and the court announced at the hearing that the plan could be confirmed subject to the resolution of the remaining objection.

The remaining objection to be dealt with by this order is that of Walter Kelly, the standing Chapter 12 trustee appointed for this district pursuant to the provisions of 28 U.S.C. § 586(b), to the plan provisions providing for the debtors to make payments directly to all of their secured creditors and thus attempting to avoid payment of the trustee's percentage fee. Pursuant to 28 U.S.C. § 586(e)(1)(B), the attorney general has fixed the percentage fee for the Chapter 12 trustee in this district at six (6%) percent of the payments made under the plan. The trustee argues that if he is not able to collect a percentage fee on the payments made to secured creditors in this and other Chapter 12 cases in this district, it would become economically impossible for him to support an operation necessary to continue to serve as the standing Chapter 12 trustee for this district.

In the instant case, the debtors' amended plan proposes to pay all secured claims, all of which are impaired under the plan, di-

rectly to the holders of those claims with only the funds for payment to unsecured creditors to be made through the trustee. The secured claims which the debtor proposes to pay include the Farm Credit of Northwest Florida, ACA (Farm Credit) with a mortgage on the debtors' real property, NCNB National Bank with liens on an automobile and farm equipment, First National Bank of Brewton with liens on farm equipment, The Bank of Brewton with liens on a pickup truck and camper trailer, and the United Bank of Atmore with a lien on a bushhog mower. With respect to all of the holders of claims secured by personal property, the debtors' plan will pay the present value of the allowed amount of the claims over the duration of the plan. Farm Credit will receive payments over 23 years. Based on the liquidation analysis in the debtors' plan, the minimum amount required to be paid to the trustee on account of unsecured claims during the term of the plan will be $3,220. If the trustee received his fee on the minimum payments required under the plan through the trustee's office, his total compensation for services under this plan would be $193.

■ This case calls for renewed consideration of issues previously decided by this court in *In re Crum*, 85 B.R. 878 (Bankr. N.D.Fl.1988) and *In re Cannon*, 93 B.R. 746 (Bankr.N.D.Fl.1988). In those cases we considered the questions of whether a debtor in Chapter 12 can make payments directly to secured creditors and if so whether the trustee is entitled to receive a fee based on the payments made directly by the debtor. In those two cases, both of which were decided prior to the appointment of a standing trustee in this district, we held, as have the vast majority of courts, that under certain circumstances a Chapter 12 debtor may make payments directly to secured creditors. In *Crum*, this court intimated without any analysis or discussion that payments made directly to creditors by a Chapter 12 debtor would not be subject to the trustee's commission. However, in *Cannon*, we thoroughly analyzed the issue and held that the trustee was entitled to receive a commission on all payments made on claims which were mod-

ified under a plan even though the debtor was making the payments directly to the creditors. Since a standing trustee had not been appointed, this court was obligated pursuant to 11 U.S.C. § 326(b) to fix a reasonable trustee's fee not to exceed five (5%) percent. Accordingly, we established a fee schedule of five (5%) percent for payments made through the trustee and 2½% on payments made directly to the creditors.

Since a standing trustee has now been appointed, this court no longer has the discretion to set the percentage of the trustee's fee since that fee is established pursuant to 28 U.S.C. § 586(e). *Matter of Finkbine*, 94 B.R. 461 (Bankr.S.D.Oh.1988). Thus, to the extent that the trustee is to receive his commission on payments, the percentage shall be 6% as is currently established in this district. The issue of whether or not the Chapter 12 trustee's percentage may be assessed on payments made directly to creditors has been considered by a number of courts since this court decided *Cannon* and *Crum*. The majority of courts deciding the issue have held, as we did in *Cannon*, that where claims are modified pursuant to the terms of a Chapter 12 plan, the payments would be subject to the trustee's statutory percentage fee. *In re Mouser*, 99 B.R. 803 (Bankr.S.D.Oh.1989); *Matter of Finkbine*, 94 B.R. 461 (Bankr.S.D.Oh.1988); *Matter of Sutton*, 91 B.R. 184 (Bankr.M.D.Ga. 1988); *In re Logemann*, 88 B.R. 938 (Bankr.S.D.Ia.1988). Only in *Matter of Pianowski*, 92 B.R. 225 (Bankr.W.D.Mi. 1988) did the bankruptcy court hold that payments made directly to a secured creditor would not be subject to the trustee's statutory percentage fee. However, we note that in *Pianowski*, the court subjected such direct payments to exacting scrutiny which would appear in almost all cases to result in the large majority of payments being made through the trustee. Thus, the practical effect of that decision still results in the trustee receiving his percentage fee on the vast majority of payments made under Chapter 12 plans. Having reviewed all of the cases on this subject, we hold

now as in *Cannon* that the trustee is entitled to receive his percentage commission on all payments made to creditors whose claims are modified pursuant to the terms of the Chapter 12 plan.

We must now consider the issue as to which claims should be paid through the trustee and which claims may be paid directly by the debtor. It is clear, and virtually all cases have so held, that claims which are being kept current, are not in default, and are not to be modified under the plan can be paid directly to the creditors. It has also been fairly universally held as we held in *Crum* and *Cannon,* that payments for unsecured creditors must be made through the trustee. That leaves us with the question of which impaired secured claims should be made through the trustee and which may be made by the debtor. In *Cannon,* we found that direct payments to lending institutions, most of whom do not object to receiving direct payments would normally be permissible since those institutions have internal systems and procedures to receive and monitor the debtor's payments, and further that they have the resources to enforce their remedies in event of default. However, the experience of this court with Chapter 12 cases and the experience that the standing Chapter 12 trustee has had with cases involving large numbers of direct payments to secured creditors convinces us that this policy needs to be revisited. The trustee reported to the court at the hearing in this case, and the court is aware from previous Chapter 12 cases which have been dismissed subsequent to Mr. Kelly's appointment, that permitting the Chapter 12 debtors to make most of their payments directly to secured creditors places the trustee in a very difficult position with respect to

monitoring those cases. Without the payments being made through the trustee, the trustee frequently does not know whether the debtors are performing or not for a considerable period of time. In *Pianowski,* the court established a fairly lengthy laundry list of non-exclusive factors which it would consider in determining whether a direct payment would be permitted under a Chapter 12 plan.[1] Having analyzed the various factors, the court in *Pianowski* authorized the debtors to make direct payments to legally sophisticated creditors who had been involved in the case and represented by competent counsel, who had economic incentive and willingness to monitor direct payments, who had specifically consented to their treatment under the plan and who were capable of taking prompt action to protect their interest upon default. 92 B.R. at 235. We agree with that court's analysis of those conditions and requirements and specifically adopt those in this case and in future cases in this district.

Turning to the plan under consideration, the Farm Credit Service of Northwest Florida has not consented to direct payments from the debtor and at hearing expressed its position through counsel that in all Chapter 12 cases it preferred to be paid by the trustee. Accordingly, payments to the Farm Credit Service shall be made through the trustee.

With the exception of NCNB National Bank with respect to its automobile loan, none of the other secured creditors have actively participated in this case nor have they expressed consent to their treatment under the plan. Accordingly, payments to NCNB National Bank on the farm equipment, First National Bank of Brewton, Bank of Brewton, and United Bank of

---

1. These factors are listed at 92 B.R. 233 as follows: 1) The past history of the debtor; 2) The business acumen of the debtor; 3) The debtor's post-filing compliance with statutory and a court imposed duties; 4) The good faith of the debtor; 5) The ability of the debtor to achieve meaningful reorganization absent direct payments; 6) The plan treatment of each creditor to which a direct payment is proposed to be made; 7) The consent or lack thereof by the affected creditor to the proposed plan treatment; 8) The legal sophistication incentive and ability of the affected creditor to monitor compliance; 9) The ability of the trustee and the court to monitor future direct payments; 10) The potential burden on the Chapter 12 trustee; 11) The possible effect upon the trustee's salary or funding of the U.S. Trustee's system; 12) The potential abuse of the bankruptcy system; 13) The existence or other unique or special circumstances.

Atmore shall be made through the Chapter 12 trustee.

█ With respect to the NCNB National Bank automobile loan, NCNB has actively participated through competent counsel in this case who appeared at the hearing on confirmation and specifically agreed to the treatment of that claim pursuant to the plan. Additionally, the NCNB automobile loan is to be paid in monthly installments throughout the duration of the plan and we are satisfied that NCNB is entirely capable of monitoring the future payments and capable of taking prompt action to protect its interest. Further, given the normally rapid depreciation associated with automobiles, NCNB has a strong economic incentive to closely monitor the payments being made by the debtor. Therefore, the debtor shall be permitted to make its monthly installments directly to NCNB National Bank with respect to its automobile loan.

Accordingly, the objections of Walter Kelly, the Chapter 12 trustee to confirmation of the debtors' Chapter 12 farm plan is hereby sustained insofar as it pertains to the debtors' proposal to make direct payments to all secured creditors with the exception of NCNB National Bank on its claim secured by an automobile. It is

FURTHER ORDERED that the debtors shall amend their Chapter 12 plan to comply with the requirements of this order and that upon the filing of such an amendment, an order confirming the plan may be entered by the court.

DONE AND ORDERED.