In the Matter of Gary W. SEAMONS
and Shirley Seamons, Debtors.

Bankruptcy No. 91–00986.

United States Bankruptcy Court,
D. Idaho.

Sept. 11, 1991.

Brent T. Robinson, Ling Nielsen & Robinson, Rupert, Idaho, for debtors.

Daniel C. Green, Racine Olson Nye Cooper & Budge, Pocatello, Idaho, for Eastern Idaho Agr. Credit Ass'n.

James A. Spinner, Green Service Gasser & Keri, Pocatello, Idaho, for Farm Credit Bank.

Jeffrey G. Howe, Asst. U.S. Trustee.

L.D. Fitzgerald, Pocatello, Idaho, Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

*Introduction.*

Debtors have presented their Chapter 12 plan for confirmation which proposes a direct payment, not through the Chapter 12 Trustee, of $135,000 to secured creditor Eastern Idaho Agricultural Credit Association ("EIACA") in consideration for the use during the pendency of this bankruptcy of cash collateral in the form of crop proceeds. Trustee[1] objects to the proposed direct payment as being contrary to the

---

1. The standing Chapter 12 Trustee's position in this case is represented in the briefing to the Court by the U.S. Trustee, who joins his objection.

Bankruptcy Code. Alternatively, even if a direct payment is allowed, Trustee contends that he is entitled to payment of his statutory percentage fee as to the payment. Debtors submit that such a direct payment is authorized by law and is appropriate under the facts of this case without payment of any trustee's fee. The plan was confirmed subject to resolution of this single issue.

*The Plan.*

Debtors filed for relief under Chapter 12 on March 28, 1991 at a time when they were indebted to EIACA in excess of $545,-000. The debt was secured by a lien on most of their real and personal property, including the proceeds from their 1990 crops. Not surprisingly, Debtors moved the Court for permission to use the crop proceeds as cash collateral in their 1991 farming operation. A stipulation authorizing use of $135,000 was entered into between EIACA and Debtors, and approved by the Court, after notice and hearing without objection. The stipulation and order both provide that Debtors shall repay the cash collateral by March 15, 1992 with interest.

After negotiations, Debtors were also able to arrive at a stipulation concerning treatment of the EIACA secured claim in their Chapter 12 plan which treatment substantially modifies the creditor's contract rights, consistent presumably with the provisions of the Code. The written stipulation and the proposed plan, now confirmed, both reiterate and incorporate the provisions for the March repayment of the cash collateral.

*Discussion.*

After argument by the parties, and additional research by the Court, considerable statutory, decisional, and other authority has been discovered for Debtors' position. Because of this, only the briefest discussion of this authority is needed here.

Several Chapter 12 provisions contemplate direct payments by a debtor to an impaired secured creditor. Section 1226(c) provides that the trustee shall make payments to the creditors under a plan "[e]xcept as otherwise provided in the plan or in the order confirming the plan...." Section 1225(a)(5)(B)(ii), governing "cramdown" of secured claims, refers to "property to be distributed by the trustee or the debtor under the plan on account of such claim[s]...." Section 1222(b)(9) contemplates payment of secured claims over time periods exceeding those during which a trustee will serve in a Chapter 12 case.[2]

Likewise, the language of the statute providing for payment of trustee's fees applicable here requires that the trustee "collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 ... for which such individual serves as standing trustee." 28 U.S.C. § 586(e). This language may be compared with the fee provision applicable prior to the imposition of the U.S. Trustee system in this district.[3] If direct payments are allowed, as opposed to payments via the Chapter 12 trustee, a literal reading of the Code would except such payments from the trustee fee.

Similarly, the leading legal treatise urges recognition of the Chapter 12 debtor's right to make direct payments. 5 L. King, Collier on Bankruptcy, ¶ 1226.01 (15th ed. 1990). It would also except such payments, when allowed by the Court, from trustee's fees. *Id.* at ¶ 1202.01[5].

**2.** The quoted language of Section 1225(a)(5)(B)(ii) is conspicuously different than that found in the corresponding provisions of Chapter 13. Likewise, there is no counterpart to Section 1222(b)(9) in Chapter 13. Chapter 12 was patterned after Chapter 13 and the differences are therefore significant.

**3.** Prior to the effective date of the U.S. Trustee system in this district, and in those districts where the U.S. Trustee system is still not effective, trustee compensation is controlled by 11 U.S.C. § 1202(d) rather than 28 U.S.C. § 586(e). "There exists one subtle though significant difference between the two provisions. In describing the payments against which the amount of the percentage fee may be assessed, section 1202(d)(2) refers to 'all payments under plans' in the cases in which the trustee serves whereas section 586(e)(2) of title 28 refers to 'all payments received by such individual'." 5 L. King, Collier on Bankruptcy, ¶ 1202.01[5], 1202-10 (15th ed. 1989).

■ The case law is, somewhat unexpectedly, divided on the issue. A variety of analytical approaches have been adopted by the Courts with different results.[4] One case of particular interest to this Court is the decision of the Ninth Circuit Bankruptcy Appellate Panel in *In re Fulkrod*, 126 B.R. 584 (9th Cir. B.A.P.1991). Without regard to whether the decision constitutes binding authority in this case,[5] the Court is persuaded to adopt the reasoning and result reached by the Panel.

After a review of the statute and cases, and after recognizing the excellent policy arguments advanced by trustee, the *Fulkrod* court summarizes its position as follows:

> Generally, a plan should be drafted to include trustee payment of obligations impaired by bankruptcy law, and to exclude obligations which are not. While we do not conclude that impaired claims must always be disbursed by the trustee, or that unimpaired claims must always be disbursed by the debtor, we hold that the statutory trustee's fees should be assessed against all payments made by the trustee, and that the trustee should disburse all payments on impaired claims in the absence of a contrary plan provision.

> A contrary provision in a plan or an order confirming a plan is permissible because the code contemplates *flexibility in the payment of claims, and would allow direct payment of an impaired claim without trustee compensation in appropriate circumstances. Whether such a plan provision should be allowed is committed to the sound discretion of the bankruptcy court. The exercise of that discretion would ordinarily consider, without implying any limitations, the impact of the trustee's fees on the ability of the debtor to reorganize and the adequacy of the trustee's compensation.*

126 B.R. at 588 (emphasis added) (footnote omitted). The Court cautions in its footnote to the above instruction that direct payments to impaired secured creditors should not be routinely permitted; that "there is a preference for trustees to administer estates;" and that direct payment "agreements can have dire consequences for both debtor and other creditors, particularly if they contain automatic lift stay or similar provisions which are triggered upon default." *Id.* at 588, n. 3.

Debtors' arguments in favor of the direct payment in this case are appealing, but certainly not compelling. First they argue that use of cash collateral is, in effect, akin to an operating loan which will be repaid with interest at harvest, and thus no administrative fee is justified. It is manifest, however, that such funds are available to most Chapter 12 debtors solely because of the existence of those special legal rights granted by the Code, and so any effort to analogize to nonbankruptcy settings is misplaced. In addition, the creditor here advanced no new money and had little basis to resist the use of the funds, assuming its interests were adequately protected. Clearly, use of cash collateral in this situation is a right peculiar to bankruptcy.

The same answer is appropriate in response to Debtors' next contention that EIACA's rights in the cash collateral were not really impaired by the plan in this case. It is true the creditor will receive from Debtors under the plan repayment of all amounts that were utilized, plus interest. It is also true that this arrangement was negotiated and agreed to prior to confirmation of the plan. It is pure speculation, however, to also conclude that a similar arrangement would have been available to Debtors had the Chapter 12 case not been filed.

---

**4.** The Court will decline the invitation to utilize a "string citation" to the large number of decisions on each side of the question, preferring to mercifully refer the reader to the thoughtful discussion and catalogue of the case law found in *In re Overholt*, 125 B.R. 202 (D.S.D.Ohio 1990).

**5.** *See Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir.1990) (It is unclear whether the decisions of the Bankruptcy Appellate Panel are binding on all bankruptcy courts in this circuit).

Finally, Debtors' claim that having to pay trustee fees in addition to interest on the cash collateral obligation constitutes an undue burden is also fallacious. Using this argument, any trustee's fees payable by Debtors would constitute a burden. Debtors were aware of the administrative costs of Chapter 12 when they voluntarily elected to pursue relief.

By contrast, this Court is impressed with the arguments advanced by the Trustee, and otherwise discussed in the cases, which would not allow any direct debtor payments on impaired claims in a Chapter 12 case. Direct payments to creditors make it more difficult for a trustee to perform his statutory duties to oversee a debtor's performance under a plan, 11 U.S.C. § 1202(b), and if widespread, could jeopardize the somewhat delicate method of fixing trustee compensation established by Congress and implemented by the United States Trustee, which was designed to spread the cost of Chapter 12 among all debtors. 28 U.S.C. § 586. However, the Court cannot overlook the other obvious references to direct payments in the statutes, and arguments questioning the wisdom of direct payments invite the Court to exceed its proper role and are more appropriately addressed to Congress.

Therefore, while it is clear that there is a weighty presumption inherent in the Code that the trustee administer all payments in Chapter 12 cases, and that in order to have the protections of Chapter 12 cases, debtors must support the trustee's office which is such an integral part of the statutory scheme, direct payments may be allowed in certain circumstances. *Fulkrod*, 126 B.R. at 588.

■ In fairness, though, the Court should consider a comprehensive variety of factors in determining whether to allow direct payments without trustee fees. See *In re Pianowski*, 92 B.R. 225 (Bankr. W.D.Mich.1988). A list of those factors, while not necessarily exclusive, is contained and discussed in more detail in the *Pianowski* decision and include consideration of: the history of the debtor; the business acumen of the debtor; the debtor's post-filing compliance with statutory and court-imposed duties; the good faith of the debtor; the ability of the debtor to achieve a meaningful reorganization absent direct payments; the plan treatment of each creditor to which a direct payment is proposed to be made; the consent, or lack thereof, by the affected creditor to the proposed plan treatment; the legal sophistication, incentive, and ability of the affected creditor to monitor compliance; the ability of the trustee and the court to monitor direct payments; the potential burden on the Chapter 12 trustee; the possible effect upon the trustee's salary or funding of the U.S. Trustee system; the potential for abuse of the bankruptcy system; and the existence of unique or special circumstances. *Id.* at 233–234. While the review of direct payment plan provisions obviously will not be exact, given the admonitions of *Fulkrod* and the factors enumerated by *Pianowski*, all of which this Court adopts, the Court should have considerable guidance in reviewing such proposals under the existing statutes.

*Application to this Case.*

■ After an evaluation of the facts in this case in light of the rules announced above, and giving due deference to the presumption against direct payments, the Court will approve Debtor's proposal to make the March, 1992 payment directly to EIACA without imposition of a trustee's fee. There are several reasons for this, some of which are discussed below.

The cash collateral payment will be made only once, with all other payments to EIACA, as well as the payments to all other major creditors, being made via the Trustee. There will be little, if any, administrative prejudice or burden to the Trustee occasioned by the direct payment, and verification of compliance will be uncomplicated. EIACA is a sophisticated farm lender and has consented to the direct payment, and given the size of the payment, will likely be diligent in promptly acting should the payment not be made.

Debtors indicate that while they could pay the Trustee's fees from their expected

cash flow, to do so will make their budget extremely tight and increase the potential of failure. Debtors have prosecuted their case diligently, and there is neither evidence in the file nor allegation by the Trustee, that Debtors have not cooperated and complied with all duties. Debtors appear to be proceeding in good faith and making their best effort.

This plan will generate substantial trustee fees from payments made to other creditors which is sufficient, in the Court's opinion, and will adequately but not disproportionately compensate the system for Trustee's services here. While it is speculation to predict the situation in March, the Trustee in this region currently receives the maximum compensation allowed under the statute. As a protection to Trustee and other creditors, the Debtor and EIACA will both be required to provide verification to the Trustee if and when the cash collateral is made to the creditor by Debtors.

A separate order will be entered.

### ORDER

For the reasons set forth in the Court's Memorandum of Decision filed herewith, Trustee's objection to confirmation of Debtors' Amended Chapter 12 Plan is hereby OVERRULED and the plan is approved as filed; PROVIDED, HOWEVER, Debtors and Creditor Eastern Idaho Agricultural Credit Association are each directed to provide written verification to Trustee if and when Debtors make the cash collateral payment due March 15, 1992.