**In re Bill Brandon BEARD,
Peggy J. Beard, Debtors.**

**Bankruptcy No. 2-91-03786.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Nov. 1, 1991.

**240**

Charles W. Ewing, Charles W. Ewing Co., L.P.A., Hilliard, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Chapter 12 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## ORDER DENYING CONFIRMATION

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Background*

Bill and Peggy Beard ("Debtors") filed a petition under Chapter 12 of the Bankruptcy Code on May 21, 1991. This matter is before the Court upon an objection to confirmation of their Chapter 12 Plan of Reorganization ("Plan"). The standing Chapter 12 trustee ("Trustee") objects to confirmation as certain terms of the Plan propose direct payments by the Debtors to certain creditors. The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. Pursuant to 28 U.S.C. § 157(b)(2)(L), this is a core proceeding, involving the confirmation of a plan.

The Trustee objects to terms of the Plan which propose that the Debtors make direct payments to the two scheduled secured creditors, Farm Credit Services ("FCS") and Farmers' Home Administration ("FmHA"); to the two priority creditors, Perry and Fairfield Counties, for real estate taxes; as well as to the Debtors' attorney, an administrative claimant. No creditor has objected to the Plan's confirmation.

The Plan is characterized as a "disposable-income plan," meaning that any dividend on general unsecured claims will be paid only if more income than is anticipated is generated. *See* 11 U.S.C. § 1226(b). With respect to Chapter 12 plans, however, this quite often means that no dividend will be available for general unsecured creditors. Aside from his objection to the methods of payment proposed by the Plan, the Trustee recommends that the Plan be confirmed as it meets all other standards for confirmation.

### II. *Discussion*

The Trustee objects to the direct payment proposals. The key to the Trustee's objection is the fact that the Plan is a disposable income plan. Although the Plan contains a provision proposing that unsecured claims shall be satisfied "under the Plan," *i.e.*, by the Debtors making payments to the Trustee, all other claims are

proposed to be satisfied by direct payments from the Debtors. The result is that the Trustee likely will make no payments under the Plan and, therefore, receive no commission. By disbursing these monies themselves, the Debtors desire to eliminate payment of the statutory fee assessed by the Trustee for making payments under the Plan.

Specifically, the Trustee objects to direct payments to FmHA because FmHA's claim is impaired, and, thus, should be paid under the Plan to enable the Trustee's Office to monitor such payments. The Trustee also argues that attorney's fees may not be paid directly as attorney's fees are administrative claims. With respect to the tax claims, the Trustee states that he would withdraw his objection if there was a written agreement on the payments of the delinquency. At the date of the hearing, no such written agreement existed.

■ The framework of Chapter 12 creates a tension between the competing interests of the debtor and the trustee. 28 U.S.C. § 586 provides for the compensation of standing trustees under Chapter 12 and 13 as follows:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix

. . . .

(B) a percentage fee not to exceed—
(ii) in the case of a debtor who is a family farmer, the sum of—
(I) not to exceed ten percent of the payments under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,-000; . . .

The fee fixed is ten (10) percent. The prevailing view is that the trustee may only assess this ten percent commission on payments made under the plan of reorganization and may not collect on disbursements made outside of a plan, by the debtors themselves. *See, e.g., Fulkrod v. Barmettler (In re Fulkrod),* 126 B.R. 584, 588 (9th Cir. BAP 1991); *Overholt v. Farm Credit*

*Services (In re Overholt),* 125 B.R. 202, 210 (S.D. Ohio 1991); *Yarnell v. Erickson Partnership (In re Erickson Partnership),* 83 B.R. 725, 727 (D.S.D.1988), *aff'g* 77 B.R. 738 (Bankr.D.S.D.1987); *Matter of Seamons,* 131 B.R. 459 (Bankr.D.Idaho 1991); *In re Heller,* 105 B.R. 434, 437 (Bankr.N.D.Ill.1989); *Matter of Finkbine,* 94 B.R. 461, 463 (Bankr.S.D.Ohio 1988); *Matter of Pianowski,* 92 B.R. 225, 231 (Bankr.W.D.Mich.1991); 5 *Collier on Bankruptcy,* Para. 1226.01 (L. King, 15th ed. 1990). *But see In re Golden,* 131 B.R. 201, 203 (Bankr.N.D.Fla.1991); *Matter of Logemann,* 88 B.R. 938, 941 (Bankr. S.D.Iowa 1988); *In re Greseth,* 78 B.R. 936, 940 (Bankr.D.Minn.1987).

Nothing in the Bankruptcy Code specifically requires that plan payments flow through the trustee. *Matter of Kline,* 94 B.R. 557, 559 (Bankr.N.D.Ind.1988). The statutory bases for concluding that the trustee is entitled to collect his fee only on payments made under the plan are §§ 1225(a)(5) and 1226(c) of the Bankruptcy Code. Section 1225, which lists the requirements for confirmation of a Chapter 12 plan, provides in pertinent part as follows:

(a) Except as provided in subsection (b), the court shall confirm the plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(B)(ii) the value, as of the effective date of the plan, of property to be distributed by *the trustee or the debtor under the plan* on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1225(a)(5)(B)(ii) (emphasis added). Section 1226 states: "Except as otherwise provided in the plan or in the order confirming the plan, *the trustee shall make payments* to creditors *under the plan.*" 11 U.S.C. § 1226(c) (emphasis added).

Congress intended that the trustee play a significant role in the administration of Chapter 12 cases. *Fulkrod,* 126 B.R. at 587; *In re Mouser,* 99 B.R. 803, 806

(Bankr.S.D.Ohio 1989). What the relevant provisions of Chapter 12 essentially suggest is that, while the trustee generally will be the disbursing agent of a Chapter 12 plan, certain claims may be paid outside of the plan, *i.e.*, directly by the debtors. *Kline*, 94 B.R. at 559. Unfortunately, the Bankruptcy Code does not provide additional guidance as to *which* claims may be paid by the debtor outside of the plan. *Id.* The only explicit statutory limit on direct payment is found in 11 U.S.C. § 1225: "When discussing unsecured claims, section 1225(a)(4) speaks only in terms of 'property to be distributed under the plan,' unlike section 1225(a)(5)(B)(ii)'s reference to 'property to be distributed by the trustee or the debtor.'" *Erickson*, 83 B.R. at 727. Section 1225 thus appears to provide that payments on secured claims may be distributed by either the trustee or the debtor. As a result of this dearth of statutory authority, case law must be reviewed in order to determine which, if any, of the proposed direct payments by the Debtors are appropriate. *Kline*, 94 B.R. at 559; *Erickson*, 83 B.R. at 727.

## A. *Various Claimants*

### 1. *Farm Credit Services*

■ There is no statutory prohibition to a debtor directly paying a fully secured claim. In fact, the plain language of 11 U.S.C. § 1225(a)(5)(B)(ii) specifically permits payment of secured claims by either the trustee or the debtor. *See supra*, p. 241. *See also Overholt*, 125 B.R. at 204; *Finkbine*, 94 B.R. at 465; *Matter of Sutton*, 91 B.R. 184, 186 (Bankr.M.D.Ga.1988). Additionally, it is noteworthy that FCS has not objected to being paid directly nor has the Trustee expressed any opposition. *See Overholt*, 125 B.R. at 211. The Court, therefore, holds that the debtors are authorized to make direct payments to FCS, a fully secured creditor.

### 2. *Farmers' Home Administration*

■ FmHA is an undersecured creditor whose rights are modified under the Plan. Three general views on the question of whether payments to creditors who are impaired by a Chapter 12 plan of reorganization must be made by the trustee have emerged. The first view holds that all payments to impaired creditors must be collected and disbursed by the trustee and that the trustee's fee is assessed on the aggregate of these collections and payments. *See Fulkrod*, 126 B.R. at 585–86; *Finkbine*, 94 B.R. at 463–64; *Sutton*, 91 B.R. at 184; *Logemann*, 88 B.R. at 938. These decisions recognize that, while certain claims may be paid directly by a Chapter 12 debtor, the only claims which may be paid in this way are unimpaired.

The second view, exemplified by *Sutton*, 91 B.R. 184, reaches a similar conclusion, but holds that the Chapter 12 trustee is entitled to collect his fee on "all payments made under the plan on *impaired* claims." *Id.* at 186 (emphasis added). Under this view, it does not matter *who* actually disburses the payments on impaired claims. The trustee's fee is calculated based on a percentage of the aggregate impaired claims and not based on who makes the payments on such claims. *Id.* at 585–86. *See also Logemann*, 88 B.R. 938. These decisions not only represent a minority view, but also appear to conflict with the plain language of the applicable statutory sections, especially 28 U.S.C. § 586(e).

The third view finds that the trustee is entitled to a fee only on payments he actually disburses and that it is not necessary that the trustee make disbursements on impaired claims. *See Seamons*, 131 B.R. 459; *Heller*, 105 B.R. 434; *Pianowski*, 92 B.R. 225; *Erickson*, 83 B.R. 725. The cases following this general trend, however, do not allow the debtor an absolute right to make direct payments on impaired claims. Rather, each decision puts some limit on direct payments.

The Bankruptcy Court in *Pianowski* set out a detailed, but not exclusive, list of factors to consider in determining whether a direct payment may be permitted in a Chapter 12 plan:

1. the past history of the debtor;

2. the business acumen of the debtor;

3. the debtor's post-filing compliance with statutory and court-imposed duties;

4. the good faith of the debtor;

5. the ability of the debtor to achieve meaningful reorganization absent direct payments;

6. the plan treatment of each creditor to which a direct payment is proposed to be made;

7. the consent, or lack thereof, by the affected creditor to the proposed plan treatment;

8. the legal sophistication, incentive and ability of the affected creditor to monitor compliance;

9. the ability of the trustee and the court to monitor future direct payments;

10. the potential burden on the Chapter 12 trustee;

11. the possible effect upon the trustee's salary or funding of the U.S. Trustee system;

12. the potential for abuse of the bankruptcy system;

13. the existence of other unique or special circumstances.

*Id.* at 233–34 (footnotes omitted). The *Pianowski* court pointed out an anomaly in the trustee's objection, in that, if direct payments by the debtors were not permitted, or if permitted, but subjected to the trustee's statutory fee, the plan at issue could not be confirmed due to the additional financial burden imposed by the assessment of the trustee's fee.

In *In re Overholt*, the tripartite test first established in *Erickson*, was adopted in addressing the question of whether direct payments may be made on impaired claims. *Overholt*, 125 B.R. at 212. The test, based on §§ 1222(a)(3), (b)(1), and 1225(a)(3) of the Bankruptcy Code, permits a debtor to pay a creditor's modified claim directly if:

(i) that creditor's claim receives the same treatment as other claims within a particular class of creditors, unless that creditor agrees to less favorable treatment;

(ii) that creditor's claim is not 'preferred' to other 'unsecured' creditors similarly situated, thereby discriminating against

those creditors; (iii) that creditor has established a self-monitor and remedy device in the event of plan obligation failure; *and* (iv) the creditor does not object to direct payment.

*Id.* (quoting *Erickson,* 77 B.R. at 745) (emphasis in original) (footnote omitted). The court also looked to the *Pianowski* factors in making its final determination that direct payments on an impaired claim were appropriate. The court, however, rejected two of the factors listed in *Pianowski* as inconsistent with § 1225(a)(6): the potential burden on the Chapter 12 trustee and the possible effect on the Chapter 12 trustee or U.S. Trustee funding systems. *Overholt,* 125 B.R. at 212 n. 21.

The Ninth Circuit Bankruptcy Appellate Panel in *Fulkrod* stated that direct payments on impaired claims are permissible, but only in rare cases. The court held that the trustee's fee should be assessed against all payments made by the trustee and that the trustee should make all disbursements on impaired claims "in the absence of a contrary plan provision." *Fulkrod,* 126 B.R. at 588; *see also Seamons,* 131 B.R. 459.

Whether such a plan provision should be allowed is committed to the sound discretion of the bankruptcy court. The exercise of that discretion would ordinarily consider, without implying any limitations, the impact of the trustee's fees on the ability of the debtor to reorganize and the adequacy of the trustee's compensation.

*Fulkrod,* 126 B.R. at 588. The court cautions that such a provision should not be permitted routinely. *Id.* at 588 n. 3. The Court also stated:

We believe that Congress intended to use the term 'under the plan' to mean those payments which result from the operation of Chapter 12 bankruptcy law. Those payments should be made by the trustee, and the trustee's fee should be assessed against the funds received from the debtor for that purpose. Typically, those payments will involve impaired claims which the debtor could not insist upon but for the protections of Chapter

12. To have those protections, the Chapter 12 debtor must support the trustee's office which is so integral a part of the Chapter 12 statutory scheme.

*Id.* at 588.

Applying the considerations of these decisions to the instant facts, the Court determines that the Debtors may pay FmHA directly. While the Court agrees with the assertion of the Ninth Circuit Bankruptcy Appellate Panel that such plan provisions should not be permitted routinely, several factors lead to the conclusion that direct payments are particularly appropriate in this case. The impact of the Trustee's fee on the Debtors' ability to reorganize has not been assessed specifically, but the Debtors have stated that the fee would impose an undue burden on them. The Trustee's compensation, as will be apparent later in this opinion, will be adequate without payments being made under the Plan to FmHA. Looking to the *Pianowski* factors, it is noted that: while the Debtors have been in bankruptcy prior to the present proceeding, their prior bankruptcy occurred over twenty years ago; the Debtors have been engaged in farming operations since 1959; the Debtors have complied with all statutory and court-imposed duties post-filing; the Trustee has found that the Debtors' Plan, aside from the direct payment provisions, has been proposed in good faith; FmHA is the Debtors' only undersecured creditor; FmHA has consented expressly to its proposed Plan treatment; FmHA is legally sophisticated in that it is represented by competent counsel—the U.S. Attorney—and also is capable of monitoring compliance with the Plan; the Trustee, without additional instructions from the Court, will not be able to monitor the Debtors' payments to FmHA; at this point in the proceedings, there is no foreseeable burden on the Trustee; based on the Court's decision as to other methods of payments proposed by the Plan, the Chapter 12 Trustee will still receive compensation; and, the Court does not anticipate any abuse of the bankruptcy system.

The proposed direct payments to FmHA also satisfy the *Erickson* test, adopted in *Overholt.* FmHA's claim receives the same treatment as other claims within a particular class of creditors; to the extent FmHA's claim is secured, it will receive full payment, but to the extent FmHA is an undersecured claimant, it will receive the same dividend provided to all unsecured claimants. Thus, FmHA, to the extent it is undersecured, is not 'preferred' to other 'unsecured' creditors similarly situated. While FmHA has not established a specific remedy in the event the plan obligation fails, FmHA is represented by competent and sophisticated legal counsel. Moreover, FmHA has not objected and has even consented expressly to direct payment. The *Overholt* test is satisfied.

The Court's approval of the Debtors' proposed method of payment to FmHA focuses on several key facts. FmHA is represented by sophisticated legal counsel who were present at the hearing. FmHA's express consent to such payments is significant. As the other factors established in *Pianowski* and *Overholt* also are present, the Court approves direct payments by the Debtors to FmHA.

### 3. *Delinquent Tax Claims*

■ The Plan provides for direct payment of delinquent real estate taxes to Perry and Fairfield Counties. Neither County has objected to such a method of payment; however, neither was present at the confirmation hearing. The Trustee stated at the confirmation hearing that he would withdraw his objection if a written agreement on such payments existed.

Section 1222(a)(2) provides that a Chapter 12 plan shall "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." 11 U.S.C. § 1222(a)(2). Tax claims are entitled to priority under § 507. Only a handful of courts have addressed the issue of direct payment of taxes. *See, e.g., Greseth v. Fed'l Land Bank of St. Paul (In re Greseth),* 78 B.R. 936 (D.Minn.1987); *Matter of Kline,* 94 B.R. 557 (Bankr.

N.D.Ind.1988). Both of the foregoing decisions prohibit such direct payments.

In *Greseth*, the debtors owed delinquent real estate taxes on property which was sold by the county before the debtor filed bankruptcy; state law provided a redemption period within which the debtors could pay the delinquent taxes and redeem the land. *Greseth*, 78 B.R. at 939. The court held that such payments must be made by the trustee. First, while the plan did not restructure the tax debt, the plan did make it possible for the debtors to obtain the necessary funds to redeem the property. *Id.* at 940. Second, the trustee must supervise the repayment of the delinquent taxes because, if the taxes are not paid, title may vest in the state and harm the investment of mortgagors of the property. *Id.* In *Kline*, a rigid payment rule was enacted. Payments required to be made through the trustee are payments on account of:

   a. the claims entitled to priority under § 507 which, pursuant to § 1222(a)(2), must be paid in full;

   b. unsecured claims;

   c. secured claims which will be fully satisfied during the life of the plan, where the creditor's rights have been modified; and,

   d. the cure of an arrearage on a secured claim where the debtor will maintain the current payments otherwise required of it, as contemplated by § 1222(b)(5).

*Kline*, 94 B.R. at 560.

The factors set out in *Pianowski* are intended to apply to administrative and priority claims, as well as to secured claims. *Pianowski*, 92 B.R. at 233. The *Pianowski* court held that the question should be answered on a case-by-case basis. *Id.* Although addressing the issue in the context of attorney's fees and not delinquent taxes, at least one court has held that, as administrative expense claims have been designated specially by Congress to receive priority under § 507, such claims should be monitored closely by the trustee. *Heller*, 105 B.R. at 439. Since taxes also have been designated to receive priority, the same rationale should apply to tax claims.

The Court determines that the delinquent tax monies must be paid under the Plan and may not be paid directly by the Debtors. Referring to the *Pianowski* factors, it is noted that while the factors relevant to the Debtors are unchanged from the earlier analysis of FmHA's claim, the applicable creditor factors from the *Pianowski* list have changed. Most notably, neither creditor attended the confirmation hearing; thus, the Court does not know if either creditor has consented expressly to being paid directly. The Court also does not know if the creditors are represented by counsel and, therefore, the Court cannot assess the creditors' ability to monitor compliance. Additionally, § 1222(a)(2) states that a *plan* shall provide for full payments of priority claims unless otherwise agreed. The Counties have not otherwise agreed. The Court holds that the delinquent real estate taxes owed to Perry and Fairfield Counties must be made by the Trustee.

### 4. *Attorney's Fees*

█ As administrative expense claims, which include attorney's fees, also are entitled to priority under § 507, the same analysis as was applied to the tax claims is pertinent. An even stronger argument along these lines may be made with respect to administrative claims, as these are given first priority by § 507; taxes are listed in a seventh position.

The small number of decisions addressing this issue have tended toward requiring such payments to be made under the plan. *See Heller*, 105 B.R. at 439; *Kline*, 94 B.R. at 560; *In re Rott*, 94 B.R. 163, 168 (Bankr. D.N.D.1988); *Greseth*, 78 B.R. at 941; *In re Citrowske*, 72 B.R. 613, 616 (Bankr. D.Minn.1987).

[A]dministrative expense claimants under Section 503 and Section 507(a)(1) have been designated by Congress to receive priority. Such treatment warrants special attention. Moreover, the trustee has a general duty under the Bankruptcy Code to monitor payments made under the plan. 11 U.S.C. § 1202(b)(4). Although this duty varies somewhat from that of a Chapter 13 trustee, the primary

responsibility of monitoring the progress of the plan and payments therein is the same. It can be said, therefore, that administrative expense payments have received special attention by Congress and should be monitored by the trustee as part of his statutorily imposed responsibilities.

*Heller*, 105 B.R. at 439 (citations and footnotes omitted).

■ The only decision found which allowed attorney's fees to be paid outside of a plan by the debtors is *Pianowski:* "Although this is a close question, the court believes there is no reason to prohibit the requested direct payments of attorneys' fees *provided* that reports regarding all fee payments are filed with the court and served upon the Trustee." *Id.* at 237. The Court believes that the decision in *Pianowski* on this issue misses the point.

> Even were the court able to monitor periodic reports of payments to attorneys, with the current caseload, it would be inappropriate because the trustee is better equipped and more capable of performing such activities. In addition, the trustee should not be required to perform such tasks without being compensated.

*Heller*, 105 B.R. at 439. The primary reason for the trustee, as opposed to a debtor, making payments is to provide a mechanism for monitoring a plan. This monitoring by the trustee is a part of the compensation he is to receive. The Court holds that attorney's fees must be paid by the Trustee under the Plan.

**B.** *Reduction of Statutory Percentage*

■ The Court elects to join the growing numbers who are dissatisfied with the position of the United States Trustee on 28 U.S.C. § 586(e). Section 586 mandates that the Attorney General and the United States Trustee fix a percentage fee on payments made under the plan by the standing trustee. At the hearing on this matter, the Trustee expressed an individual willingness to reduce the ten percent fee required to be assessed on any payment he makes under Chapter 12 Plans, but stated that the United States Trustee was either uninclined or unable to change the percentage. Several courts have communicated discontent with the inflexibility of this fee, but recognize that the bankruptcy courts have no authority to enact any type of change. *Mouser*, 99 B.R. at 807; *Finkbine*, 94 B.R. at 467; *Pianowski*, 92 B.R. at 229 n. 4. *See also Golden*, 131 B.R. at 203. A decision by this Court on the same issue, but in the context of Chapter 13, acknowledged that any power to equitably adjust a standing trustee's percentage fee is vested not in the Court, but in the hands of the United States Trustee. *In re Teagardner*, 98 B.R. 318, 320 (Bankr.S.D.Ohio 1989). While the Court concedes that the United States Trustee's position may be difficult, the current lack of flexibility limits possibilities of relief under Chapter 12 for many debtors.

**C.** *Comparison of Relevant Chapter 13 Provisions*

Chapter 12 is modelled closely upon Chapter 13; however, while the two chapters are similar, they are not identical. *Stahn v. Haeckel*, 920 F.2d 555, 557 (8th Cir.1990), *cert. denied* — U.S. ——, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991); *Mouser*, 99 B.R. at 804; *Kline*, 94 B.R. at 558. Relevant to the present inquiry are the differences with regard to a plan's permissive provisions, particularly those concerning secured claims. *Kline*, 94 B.R. at 558.

Chapter 13 allows a debtor to modify the rights of most secured creditors, 11 U.S.C. § 1322(b)(2), and also to cure defaults on secured claims which extend beyond the life of the plan, while maintaining the payments required by the original obligation. 11 U.S.C. § 1322(b)(5). A Chapter 13 plan, however, may not exceed three years, unless the court approves a longer period not to exceed five years. 11 U.S.C. § 1322(c). The result of these provisions is that, with respect to secured creditors, a debtor has a limited number of options; he must either modify the rights of the creditor, but in doing so, pay the secured claim in full within the three- to five-year period, or maintain the current payments required of it without modification, except to the extent that defaults will be cured within a

reasonable time. *Kline*, 94 B.R. at 559 (citing *Matter of Foster*, 61 B.R. 492, 494 (Bankr.N.D.Ind.1986)).

A Chapter 12 debtor has a wider range of possibilities with respect to his treatment of secured claims. The rights of any secured creditor, without exception, may be modified. 11 U.S.C. § 1222(b)(2). As in Chapter 13, a Chapter 12 debtor may cure defaults, within a reasonable time period, while maintaining the current payments otherwise required. 11 U.S.C. § 1222(b)(5). The three-to-five year plan length also applies in Chapter 12, although with one exception. The Chapter 12 debtor is not limited to a choice of either modifying the rights of its secured creditors and paying on such claims within the life of the plan or curing defaults while maintaining current payments. Rather, the Chapter 12 debtor also may choose to pay on the claims of impaired creditors over a period of time exceeding the length of the plan. 11 U.S.C. § 1222(b)(9).

Another significant difference between Chapter 12 and Chapter 13 is reflected in the number of payments made into a plan by the debtor. While Chapter 13 contemplates monthly payments, the nature of Chapter 12 is such that annual payments are to be made by the debtor. *Mouser*, 99 B.R. at 805. The agricultural aspects of Chapter 12 lend themselves to payments made less often than monthly. *Id.*

These variations in Chapter 12 and Chapter 13 support a different treatment of methods of payment within each Chapter. Payments made annually, as opposed to monthly, do not require the same amount of monitoring. In addition, the greater flexibility allowed a Chapter 12 debtor with respect to treatment of secured claims suggest that greater flexibility should be permitted with respect to payment methods. Although similar in structure, several inherent differences between Chapter 12 and Chapter 13 allow for different methods of payment.

### D. *Underlying Policies*

Before concluding, an examination of the background of Chapter 12 would be helpful. Chapter 12 was enacted in response to Congressional recognition that the nation's farm industry was in the midst of an economic crisis. *Stahn*, 920 F.2d at 557; *Overholt*, 125 B.R. at 207–08; *Finkbine*, 94 B.R. at 466.

> [M]ost family farmers have too much debt to qualify as debtors under Chapter 13 and are thus limited to relief under Chapter 11. Unfortunately, family farmers have found Chapter 11 needlessly complicated, unduly time consuming, inordinately expensive and, in too many cases, unworkable.... [Chapter 12] is designed to give family farmers ... a fighting chance to reorganize their debts and keep their land. It offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, ... ensuring that farm lenders receive a fair payment.

*Overholt*, 125 B.R. at 207 (citing 132 Cong. Rec. H 8986–9002 (daily ed. Oct. 2, 1986), *reprinted in* App. 4 *Collier on Bankruptcy* at XXII–5. *See also* H.R.Rep. No. 764, 99th Cong., 2d Sess. 48 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5249)). The *Overholt* court reasoned that, if the purpose of Chapter 12 was to provide a less expensive and less complex alternative to Chapter 11, then direct payments to creditors would serve this purpose. *Overholt*, 125 B.R. at 208. The Court assumed that a reduction in the amount of the trustee's fee will result in additional monies being available more quickly to creditors. *Id.*

In direct competition with the underlying policy behind Chapter 12 is the present mechanism of compensation for standing trustees. Section 586 of Title 28 gives the United States Trustee the responsibility of determining the standing trustee's compensation. What often occurs in Chapter 12, as is apparent in the present case, is that the debtor proposes to make direct payments on all but the unsecured claims. *Mouser*, 99 B.R. at 806. If the trustee disburses monies only on the generally small dividend available on unsecured claims, little revenue will be generated to support the trustee's operation. *Id.* "It is

not merely an occasional case which carries this pattern, but the overwhelming majority of the Chapter 12 cases before this Court." *Id.* (referring to Southern District of Ohio, Eastern Division). These rival policies, in combination with the inflexibility of the ten percent assessment under 28 U.S.C. § 586, contribute to the dilemma facing judges dealing with the issue of direct payment under Chapter 12.

 The Court is not in a position to determine the exact amount and the time of receipt of any commission that will be owed to the Trustee under the Plan. In other words, at this point the Court is unable to assess the adequacy of the Trustee's compensation. Noting that the Debtors have stated that they are unopposed to the Court ordering reasonable administrative payments to the Trustee, the Court hereby elects to employ the broad statutory grant of authority given to it under 11 U.S.C. § 105.[1] At the point the Trustee determines that his compensation is inadequate and/or untimely, he may request additional compensation by filing an appropriate application with the Court. *See, e.g., Stahn v. Haeckel*, 920 F.2d 555 (8th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2258, 114 L.Ed.2d 711 (1991) (holding that bankruptcy court has discretionary power, pursuant to 11 U.S.C. § 105(a), to order preconfirmation plan payments in a Chapter 12 proceeding). The Court thereupon, after notice and an opportunity for hearing, will consider ordering regular monthly payments by the Debtor to the Trustee to cover the Trustee's reasonably incurred costs and expenses. Nowhere in the Bankruptcy Code does Congress preclude such payments; the Court views this as the best remedy to the conflict between the underlying policies involved.

### III.  *Conclusion*

Based upon the foregoing, the Trustee's objection to confirmation is sustained and confirmation of the debtor's plan is denied. The debtor is given twenty (20) days from entry of this order to propose a plan which is consistent with these findings or to take whatever other action with respect to this case as may be appropriate. If no such action is taken, the Court will dismiss this case.

IT IS SO ORDERED.

---

1.  Section 105(a) states:
    ... The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.