**In re Harlie L. TEIGEN, and Jane Teigen, Debtors.**

**Bankruptcy No. 89–11533–012.**

United States Bankruptcy Court, D. Montana.

July 1, 1992.

See also 123 B.R. 887.

**1.** 5 B.C.D. 402, 403 (E.D.Pa.1979).

James A. Patten, Patten Law Firm, P.C., Billings, Mont., for trustee.

Richard O. Harkins, Ekalaka, Mont., for debtors.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

After due notice hearing was held on June 10, 1992, on confirmation of the Debtors' Chapter 12 Plan, filed May 27, 1992. Objections were filed by the Chapter 12 Trustee on June 2, 1992, and by Pioneer Bank and Trust on June 3, 1992. The Debtors appeared and were represented at the hearing in support of confirmation. The Chapter 12 Trustee appeared and was represented in opposition. Pioneer Bank appeared and withdrew its objection to confirmation, having settled its claim in full. No testimony was heard. The Debtors filed a liquidation analysis and balance sheet at the hearing.

Argument of counsel was heard regarding the issue of whether to allow direct payments by the Debtors of impaired claims without Trustee compensation. The Trustee withdrew the objection to confirmation based upon the settlement of several unsecured claims of Matteson, the Urologic clinic, Rapid City Hospital, and Black Hills Collection Service. The Trustee further admitted that there is no agreement between the Trustee to act for the Montana Department of Revenue (DOR) or the Internal Revenue Service (IRS) in objecting to their treatment under the Plan. Neither the DOR or the IRS objected to confirmation of the Plan. Therefore, the Trustee's objection to confirmation based upon the treatment of the IRS and DOR claims is denied. At the close of the hearing this Court took the matter of confirmation under advisement and gave the Trustee five (5) days in which to file a brief on the issue of direct payments.

The Trustee filed a brief on June 18, 1992, along with a motion for immediate payment of administrative expenses, consisting of the Trustee's attorney, James A. Patten's, attorney fees in the sum of $70,666 from a fraudulent conveyance action brought against the Debtors, which is currently on appeal. The U.S. Trustee filed a brief in opposition to direct payments to impaired creditors on June 17, 1992. The Debtors filed a brief in support of direct payments on June 25, 1992, together with an objection to payment of Trustee's attorney's fees and motion to return bond.

On June 26, 1992, the Trustee filed an objection to Debtors' brief on the grounds it was filed late, and a motion to strike portions of Debtors' brief as scandalous and vexatious. Also on June 26, 1992, the Trustee filed an objection to the Debtors' motion to return bond, asserting that the bond should be held to guarantee payment of the administrative expenses, including the Trustee's attorney's fee.

The Debtors' brief in support of direct payments contained no new authority and had no effect on this Court's decision. The Trustee included no authority in support of the objection and motion to strike. Therefore, both the Trustee's objection and motion to strike are denied.

At issue is whether the Debtors should be permitted to pay impaired creditors directly, thereby avoiding Trustee compensation; whether the Plan as submitted is feasible; and whether the Trustee's attorney, James A. Patten, should be paid his

contingency fee from the fraudulent conveyance action now on appeal immediately upon confirmation of the Plan. As set forth below, this Court approves the direct payments to the creditors, confirms the Debtors' Fourth Amended Plan as amended by the stipulations reached with certain creditors, and denies the Trustee's motion for immediate payment of administrative expenses.

■ The Debtors' Plan provides for direct payment to Farmer's Home Administration (FmHA) on its unsecured claim in one stipulated lump sum of $30,000 upon confirmation. A stipulation between the Debtors and FmHA was filed May 6, 1992, in which FmHA agrees to accept $30,000 in full settlement of its unsecured claim in the amount $68,678. The Plan further provides for direct payments under a stipulated settlement between the Debtors, Farm Credit Services (FCS), and Farm Credit Bank of Spokane (FCB) which provides for direct payments in the sums of $25,000 upon confirmation, $98,625 by December 1, 1992, and annual payments of $36,502.50. The stipulation between FCB and the Debtors was filed May 11, 1992. Under its terms, FCB's allowed secured claim is set at $475,000, waiving more than $99,000 in unsecured claim. This Court finds that both FmHA's and FCB's claims are impaired under the Plan. The Court further finds that the terms of the both stipulations filed May 6 and May 11, 1992, are in the best interests of the creditors and the estate. The stipulations shall be modified to provide for the direct payments by the Debtors to the creditors, without payment to the Trustee, and approved with their terms incorporated into the Plan. Neither FmHA, FCS, nor FCB has filed an objection to confirmation of the Debtors' Chapter 12 Plan.

Under the Plan the Trustee's fees over the three (3) year term would total $5,655, with an additional Trustee's fee of $5,186 contingent on the affirmance on appeal of the fraudulent conveyance action, for a total of $10,841. The Trustee admitted at the confirmation hearing that the issue of feasibility turns solely on the additional $35,000 in Trustee's fees which would result if the direct payments proposed by the Debtors are not allowed. Since this Court hereby allows the direct payments for the reasons set forth below, and the accompanying denial of Trustee compensation on such direct payments, the Court finds the issue of feasibility is thereby conceded by the Trustee. This Court finds the Debtors' Plan is feasible and complies with 11 U.S.C. § 1225(a)(6).

This Court previously addressed the issue of direct payments by the Debtor in *In re Meadors*, 9 Mont.B.R. 446, 447–8 (Bankr.Mont.1991):

Two recent cases describe the divergent views of bankruptcy courts on the issue of Trustee fees due from Plan payments made directly by the Debtor on an impaired claim. *In re Fulkrod*, [126 B.R. 584, 587–88], 1991 WL 75243 (9th Cir. BAP 1991) and *In re Overholt*, 125 B.R. 202 (D.S.D.Ohio 1990) set forth the divergent views interpreting four statutory provisions, Sections 1225(a)(5)(B)(ii), 1226(c) and 1222(a)(1) and (b)(9) of the Bankruptcy Code, and 28 U.S.C. Section 586(e)(1). Both *Fulkrod* and *Overholt* are consistent in one aspect, i.e., the bankruptcy court has discretion to approve a Plan which provides for direct payments of impaired claims by the Debtor free of Trustee's compensation.

The difference between the two views lies in the friction between the *Overholt*'s interpretation of the plain language of 28 U.S.C.S. § 586(e)(2)[1] versus *Fulkrod*'s policy interpretations of that language by some courts. The Ninth Circuit BAP thus interpreted the phrase "under the plan" to mean those payments which result from the operation of Chapter 12 bankruptcy law, including direct payments. *Fulkrod*, 126 B.R. at 588. The BAP wrote:

Generally, a plan should be drafted to include trustee payment of obligations

---

1. 28 U.S.C. § 586(e)(2) provides: "Such individual [Trustee] shall collect such percentage fee *from all payments received by such individual* under plans in the cases under chapter 12 ..." (Emphasis added).

impaired by bankruptcy law, and to exclude obligations which are not. While we do not conclude that impaired claims must always be disbursed by the trustee, or that unimpaired claims must always be disbursed by the debtor, we hold that the statutory trustee's fees should be assessed against all payments made by the trustee, and that the trustee should disburse all payments on impaired claims in the absence of a contrary plan provision.

A contrary provision in a plan or an order confirming a plan is permissible because the code contemplates flexibility in the payment of claims, and would allow direct payment of an impaired claim without trustee compensation in appropriate circumstances. Whether such a plan provision should be allowed is committed to the sound discretion of the bankruptcy court. The exercise of that discretion would ordinarily consider, without implying any limitations, the impact of the trustee's fees on the ability of the debtor to reorganize and the adequacy of the trustee's compensation.

*Id.*

This reasoning was adopted by the bankruptcy court in Idaho in *Matter of Seamons,* 131 B.R. 459, 460 (Bankr.D.Idaho 1991). As that court noted, however, it is not clear that decisions of the BAP are binding on all bankruptcy courts in this circuit. *Id.* (citing *Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470 (9th Cir.1990)).

The district court in *Overholt,* on the other hand, held that direct payment of impaired claims to creditors, without payment to the Trustee of the percentage fees, is permissible when 11 U.S.C. § 1125 and 28 U.S.C.S. § 586 are read together. 125 B.R. at 210–211. The court wrote:

The second scenario is the confirmation of direct payment of impaired claims. Here, the court adopts *In re Erickson Partnership* [77 B.R. 738 (Bankr.S.D.1987)] and its tripartite test based upon sections 1222(a)(3), (b)(1), and 1225(a)(3). Construing these sections the court concluded that

Chapter 12 of the Bankruptcy Code permits a "family farmer" debtor … to directly pay creditors under his plan of reorganization, and not through the trustee, when … b) the creditor's approved claim is modified, *if:* i) that creditor's claim receives the same treatment as other claims within a particular class of creditors, unless that creditor agrees to less favorable treatment; ii) that creditor's claim is not "preferred" to other "unsecured" creditors similarly situated, thereby discriminating against those creditors; iii) that creditor has established a self-monitor and remedy device in the event of plan obligation failure; *and* iv) the creditor does not object to direct payment.

*Erickson,* 77 B.R. at 745 (emphasis in original).

This does not mean that the court and creditor are at the beck and call of the debtor, however, for satisfaction of the statutory requirements is a matter to be determined by the court only after a searching inquiry. This result follows from section 1225(a)(6), which requires the court to establish facts beyond those specified in the preceding five sections, all of which are readily ascertainable from the record itself without an extended or complex factual inquiry by the court. Therefore, while the court is compelled to confirm a plan which meets the statutory requirements of section 1225, the court is nevertheless an active participant in determining the extent to which the requirements have in fact been satisfied.

In addition to the statutory limitations placed on direct payments, the courts have also provided guidelines useful for determination of this issue. The following list of nonexclusive factors was promulgated by the court in *In re Pianowski* [92 B.R. 225 (Bankr.W.D.Mich. 1988)] in an effort to determine when direct payments could successfully be made:

1. The past history of the debtor;
2. the business acumen of the debtor;

3. the debtor's post-filing compliance with statutory and court-imposed duties;

4. the good faith of the debtor ...;

5. the plan treatment of each creditor to which a direct payment is proposed to be made;

6. the consent, or lack thereof, by the affected creditor to the proposed plan treatment;

7. the legal sophistication, incentive and ability of the affected creditor to monitor compliance ...;

8. the ability of the trustee and the court to monitor future direct payments;

9. the potential for abuse of the bankruptcy system;

10. the existence of other unique or special circumstances.

*Pianowski,* 92 B.R. at 233–34 & n. 6–17; *accord In re Martens,* 98 B.R. 530, 541 (Bankr.D.Colo.1989). In applying these factors, courts must also be aware of the number of creditors, the level of debt, and the frequency with which the debtor receives income, the overriding concern is that a trustee should not be compensated at the same rate for occasional distributions to a few creditors as he would for a complex reorganization requiring substantial supervision.

The foregoing factors illustrate the nature of the inquiry demanded by the construction of Chapter 12 as required by its statutory language and legislative history. These factors enable the court to inquire as to the practical implications of authorization with respect both to the debtor's ability to comply with the payment schedule and the trustee's ability to monitor the plan. Although these factors allow a degree of discretion, they are born of the statutory language itself and are meant only to determine whether the statutory requirements have been met. This Court is also mindful of the legitimate policy concerns with respect to the self-funding nature of the Trustee system and the perception that direct payments, if unchecked, could threaten to undermine the system altogether. Nevertheless, the approach adopted here

will provide an adequate safeguard from encroachment by unqualified or unscrupulous debtors while retaining a degree of discretion and flexibility inherent in the courts of bankruptcy in the United States.

*In re Overholt,* 125 B.R. 202, 212–213 (S.D.Ohio 1990).

The Court in *Overholt* did not adopt the *Pianowski* criteria in full. *Id.* at 212. Instead, it rejected two of the *Pianowski* factors, i.e., the potential burden on the Chapter 12 Trustee and the possible effect on the Chapter 12 Trustee or U.S. Trustee funding systems, as inconsistent with § 1225(a)(6). *Id.; In re Beard,* 134 B.R. 239, 243 (Bankr.S.D.Ohio 1991). Otherwise, the two (2) approaches in *Overholt* and *Fulkrod* are not dissimilar. The end result is that this Court has the discretion to allow direct payments to impaired creditors without Trustee compensation.

In applying its discretion, this Court finds that both the *Fulkrod* and *Overholt* tests are met by the proposed direct payments. The Stipulations between the Debtors, FCB, FCS, and FmHA both provide that the creditors' approved claims are modified and impaired. Both claims are the only claims in their respective class, and the creditors agreed to their treatment in the stipulations. The creditors' claims are not "preferred" to other "unsecured" creditors similarly situated, thereby discriminating against those creditors. Each creditor has established a self-monitor and remedy device in the event of plan obligation failure which is set forth in the respective stipulations. FmHA's remedy is an immediate lifting of the automatic stay if the Debtors do not make the payment within 15 days of confirmation. The monitor and remedy provisions found in FCB's and FCS's stipulation are more comprehensive. Finally, these creditors have not filed objections to the proposed direct payments, despite their size, their legal sophistication, and representation by counsel.

Indeed, this Court finds that these creditors have the incentive and ability to monitor the Debtors' compliance to the direct payments provided for under their stipula-

tions. "The overriding concern is that a trustee should not be compensated at the same rate for occasional distributions to a few creditors as he would for a complex reorganization requiring substantial supervision." *Overholt*, 125 B.R. at 213. Here there are no more than three (3) creditors involved. One will be paid off immediately. The others can take care of themselves. The Trustee's involvement will be limited. The Court finds that the *Overholt* test is satisfied.

Under the more restrictive *Fulkrod* test, this Court deems this case appropriate to exercise its equitable discretion and permit direct payments to these creditors. As stated above, FmHA will be paid off almost immediately. The others are willing and able to monitor the Debtors' compliance with, and enforce the payment terms of their stipulation over the amortization period of thirty (30) years.

The "dire consequences" to the Debtors and other creditors, *Fulkrod*, 126 B.R. at 588, are either not present or are addressed by these stipulations. The Debtors were represented by counsel and entered into the stipulations voluntarily. They will fail to abide by the payment terms of the stipulations at their own peril, given the default provisions pertaining to the lifting of the automatic stay.

Prohibiting these direct payments would result in additional Trustee's fees exceeding $35,000, according to the Trustee's attorney at the confirmation hearing. This may well defeat the feasibility of the Plan. The Plan provides for total 1992 payments of $187,087 against total cash available of $206,297.24, leaving $19,210.24 for future payment and operations. If an additional $35,000 in Trustee's fees are incurred, the Plan does not provide enough cash to pay that fee, and would not be feasible. Thus, this Court deems it appropriate to allow the direct payments to give the Debtors the opportunity to reorganize.

Under the Plan the Trustee will receive $5,655 and an additional $5,186 in contin-

gent fees, for a total compensation of $10,-841. While perhaps not lucrative, this Court finds that such compensation for the Trustee is adequate. Thus, the *Fulkrod* test is likewise satisfied. Therefore, this Court exercises its discretion and under these circumstances approves direct payments by the Debtors to the impaired creditors, without compensation to the Trustee, as provided by the Plan and stipulations.

That decided, no obstacles remain to confirmation of the Debtors' Chapter 12 Plan. Upon review of the Debtors' Fourth Amended Chapter 12 Plan, as modified by the stipulations, this Court finds that it has reasonable income and expense projections and it complies with all of the provisions of 11 U.S.C. § 1225.

The remaining matter is the Trustee's motion for immediate payment of administrative expenses, filed June 18, 1992. The Trustee seeks payment of the Trustee's attorney's fees from the fraudulent conveyance action currently on appeal in the sum of $70,666. The Trustee also objects to the Debtors' motion to return the appeal bond of $74,016.[2] The Trustee wants the bond held pending confirmation or other outcome of this case as a means to assure payment of the administrative expenses, including the attorney fee. The Debtors want return of the bond plus interest in order to help finance $12,718.76 of payments upon confirmation. The Plan does not provide for payment of the Trustee's attorney's fee until 1993, when livestock will be sold to make such payment. The attorney for FCB stated at the confirmation hearing that its lien under the stipulation is only against the livestock, and will be extinguished in December 1992, if the Debtors perform under the terms of the stipulation, leaving adequate equity to pay the Trustee's attorney's fee. No evidence or argument was offered to the contrary.

Neither side provides any case authority in support of their positions. The Trustee argues that 11 U.S.C. § 1226 requires that all approved administrative ex-

---

**2.** The source of this sum is from a prior Order of the Court approving a supersedeas bond in

the form of pre-confirmation Plan payments.

penses be paid before any payment is made to other creditors. Actually, 11 U.S.C. § 1226(b)(1) provides: "Before or at the time *of each payment to creditors under the plan,* there shall be paid—any unpaid claim of the kind specified in section 507(a)(1) ..." (Emphasis added). This language is construed to mean that such payments of administrative claims may be drawn out over the term of the Plan. In any event, the Trustee failed to provide any case authority in support of his position, and the Court finds that the Trustee has failed the burden of proof.

This Court has previously written that a Chapter 12 Plan must provide for full payment, in deferred cash payments, of all § 507 priority claims unless the creditor and Debtor agree to some other treatment of such claims. *In re Danelson,* 77 B.R. 261, 263, 4 Mont.B.R. 214, 218 (Bankr. Mont.1987). Trustee's unfounded interpretation of § 1226 is without merit.

On one hand, the stipulations referred to above implement the recovery of the property in the fraudulent conveyance action, regardless of the result of the pending appeal, and support an immediate award of the Trustee's attorney fee. On the other hand, this Court's Order entered May 5, 1992, conditioned the administrative award on the affirmance on appeal of the fraudulent conveyance action. That, together with the statement from *Danelson,* the lack of case authority by the Trustee, and the Debtors' need of the bond money to perform under the Plan during confirmation and the first year, lead this Court to conclude that the Trustee's motion for immediate payment of administrative expenses, filed June 18, 1992, is not filed for good cause.

The Debtors seek return of their appeal bond of $74,016, needing it in order to make their payments upon confirmation and 1992 payments. The Trustee resists this, stating "the funds should be held by the Trustee pending confirmation or other outcome of this case." With this Order confirming the Debtors' Plan, the Trustee has voiced no other objection to return of the $74,016 bond. Debtors offered no au-

thority whatsoever in support of an award of interest, however, and such request is therefore deemed without merit.

IT IS ORDERED:

1. That the Trustee's objection to confirmation is denied; and the Debtors' Fourth Amended Chapter 12 Plan, filed May 27, 1992, as modified by the stipulations approved below, (the "Plan") is confirmed;

2. That the Debtors shall pay over to the Trustee all amounts set forth in the Plan, at the times set forth in the Plan;

3. That the value of the collateral securing debts due holders of secured claims is fixed at the value stated in the Plan;

4. That upon completion of the Plan, according to its final terms, all judgments and U.S.C. filings shall be satisfied.

5. That the stipulation filed May 6, 1992, between the Debtors and Farmer's Home Administration (FmHA), modified to provide for direct payment by the Debtors to FmHA instead of through the Trustee, is otherwise hereby approved, incorporated into the Plan, and binds the signatories by its terms.

6. That the stipulation filed May 11, 1992, between the Debtors and Farm Credit Bank of Spokane (FCB), modified to provide for direct payment by the Debtors to FCB instead of through the Trustee, is otherwise hereby approved, incorporated into the Plan, and binds the signatories by its terms.

7. That the Trustee's objection to late filed brief and motion to strike, filed June 26, 1992, are both denied.

8. That the Trustee's objection to return of bond, filed June 26, 1992, is denied; Debtors' motion to return fees is granted in part; and the Trustee is hereby ordered to return the $74,016 bond to the Debtors, without interest.