**In re Robert TEAGARDNER, Debtor.**

**Bankruptcy No. 2–88–05605.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

March 20, 1989.

Lee C. Mittman, Columbus, Ohio, for debtor.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER SUSTAINING OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court on the Objection to Confirmation of Chapter 13 Plan ("Objection") filed by Frank M. Pees, the standing Chapter 13 trustee ("Trustee"). A second objection to confirmation of the Chapter 13 plan proposed by Robert Teagardner ("Debtor"), which was lodged by Bank One, Columbus, N.A., has been withdrawn. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(L). The following opinion and order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The Trustee objects to confirmation of Debtor's plan due to its alleged noncompliance with Local Bankruptcy Rule ("L.B. R.") C–3.18.17. L.B.R. C–3.18.17 provides as follows:

C–3.18.17 *Conduit Mortgage Payments*

In all plans in which a pre-petition arrearage exists for claims treated pursuant to 11 U.S.C. § 1322(b)(5) as of the date of the bankruptcy filing and such arrearage is in excess of two months' payments under the terms of the applicable note or contract, unless otherwise ordered by the Court, the payments maintained during the plan shall be made by the Trustee.

Debtor's plan violates L.B.R. C–3.18.17, the Trustee contends, due to its inclusion of the following term:

"Current monthly mortgage payments to TransOhio Savings Bank commencing with payment due in December, 1988, to be paid as a conduit payment by the Chapter 13 Trustee *until such time as the arrearage has been cured.*" (Emphasis added).

According to the Trustee, the phrase "during the plan" contained in L.B.R. C–3.18.17 contemplates the continuation of conduit payments (*i.e.,* payments for which the Trustee serves as disbursing agent) for the entire duration of the Chapter 13 plan. By providing for a halt to conduit payments at the point in time when the arrearage on TransOhio's long-term debt is cured (the "Cure Date"), Debtor's plan violates the clear terms of L.B.R. C–3.18.17, the Trustee argues.

Debtor frames a two-pronged rejoinder to the Trustee's Objection. First he submits that the percentage fee levied on conduit payments—eight percent—is excessive. In support of his excessiveness argument, Debtor notes that requiring the continuation of conduit payments beyond the Cure Date will have the effect of impermissibly lengthening the plan beyond 60 months (*see,* 11 U.S.C. § 1322(c)) or diminishing the dividend paid to unsecured claimholders.[1] In view of this effect, Debtor and his counsel suggest that the eight percent conduit fee is intended to augment Trustee compensation at the expense of Debtor's rehabilitative effort.

The second argument asserted by Debtor in opposition to the Trustee's Objection is as follows: Given the unique facts and circumstances presented in this case, an exception to L.B.R. C–3.18.17's conduit requirements is warranted here. Debtor's obligation to TransOhio Savings Bank ("TransOhio"), the holder of a first mortgage on Debtor's principal residence, it is conceded, was in substantial default as of the petition date. Specifically, the Trust-

ee's calculations indicate that Debtor's mortgage obligation to TransOhio was fifteen months in arrears as of the date this case was filed. Debtor disputes this calculation, but admits that an arrearage of at least nine months existed as of the filing date. Notwithstanding this substantial arrearage, Debtor cites several factors which he contends establish that his past payment history was sufficiently stable to justify an exception to L.B.R. C–3.18.17's conduit requirements. Debtor's mortgage obligation with TransOhio has been in existence for approximately 13 years. The arrearage on the TransOhio obligation was caused by Debtor's loss of employment occasioned by his serious health problems. Debtor is now healthy and employed as a laborer with Buckeye Steel Corporation. All mortgage payments due TransOhio have been paid subsequent to the filing of this case. Thus, his past and current payment history has been solid, Debtor asserts, with the only payment interruption being caused by factors beyond his control. Hence, according to Debtor, under the circumstances presented here, there is no need to require the continuation of conduit payments beyond the Cure Date in order to ensure that monthly mortgage payments to TransOhio are made on a timely basis.

Each of the arguments asserted by the Debtor shall be considered below.

■ The eight percent fee collected by the Trustee on all payments he receives under Chapter 13 plans, including conduit payments, is fixed by the Attorney General after consultation with the United States Trustee. This scheme has been established by 28 U.S.C. § 586(e)(1) and (2), which provide in relevant part as follows:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—

(A) A maximum annual compensation for such individual, not to exceed the

---

1. As presently structured, Debtor's plan calls for 100% repayment to holders of allowed unse-

cured claims.

annual rate of basic pay in effect for step 1 of grade GS–16 of the General Schedule prescribed under section 5332 of title 5; and

(B) A percentage fee not to exceed—

(i) in the case of a debtor who is not a family farmer, ten percent; ...

....

based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

Pursuant to 28 U.S.C. § 586(e)(1) and (2), the compensation received by a standing trustee, as well as his actual and necessary expenses, are to be derived from a percentage fee collected from all payments received by a trustee under Chapter 13 plans. This fee is limited to ten percent by 28 U.S.C. § 586(e)(1)(B)(i). While Congress has authorized an individual appointed by the United States Trustee as standing trustee to collect a percentage fee of up to ten percent from plan payments, the United States Trustee in this judicial district has established the percentage fee charged by the standing Chapter 13 Trustee at eight percent.

The statutory compensation scheme described above differs from that in existence in districts where the United States Trustee has yet to be certified and that which prevailed in this district prior to the United States Trustee's certification in May of 1988. Under the former scheme, the Court appointed standing trustees and fixed their compensation in accordance with 11 U.S.C. § 1302(e)(1). And, the court retained the power to equitably adjust the percentage fee charged by a standing trustee on plan payments. *Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 491 (5th Cir.1982); *Matter of Eaton,* 1 B.R. 433, 434 (Bankr.M.D. N.C.1979); *In re Case,* 11 B.R. 843, 847 (Bankr.D.Utah 1981). With the advent of the United States Trustee program in this district, the Court no longer appoints and supervises standing trustees. Further, the power to equitably adjust a standing trustee's percentage fee is no longer vested in the Court; it is instead reposed with the United States Trustee. Accordingly, a request to adjust the percentage fee levied on conduit mortgage payments should properly be directed to the United States Trustee as opposed to the Court.

In sum, Debtor's challenge to the appropriateness of an eight percent charge on conduit mortgage payments is not cognizable in this Court. The system debtor protests against has been duly-enacted by Congress and, short of repeal or modification of 28 U.S.C. § 586, any adjustment of the percentage fee charged by standing trustees under this legislative scheme can be accomplished only through a request to the United States Trustee.

Debtor suggests that the statutory scheme described above, as well as the local rule in question, are more concerned with the compensation of standing trustees than rehabilitation of debtors and maximum repayment to their creditors. As support, Debtor notes that he will be required to increase plan payments or reduce the dividend to unsecured claimholders if he must continue conduit payments past the Cure Date. The Court need not dwell at length upon this sophistic argument. To be sure, there are a number of transaction costs connected with the process whereby a debtor obtains bankruptcy relief—*e.g.,* filing fees, trustee fees and attorney fees. Far from facilitating a more effective rehabilitation of debtors, elimination of such costs would result in the demise of the system through which bankruptcy relief is administered. The Trustee, the Bankruptcy Clerk and a debtor's counsel all perform services which are vital to the remedy invoked by the debtor. The debtor cannot be heard to decry the administrative costs and burdens of the very system he resorts to for relief.

■ Debtor's second argument—that the unique circumstances of this case warrant an exception to the applicability of L.B.R. C–3.18.17—is equally unavailing. Seizing

on the phrase "unless otherwise ordered by the Court" contained in L.B.R. C–3.18.17, Debtor seeks a dispensation from the local rule's requirements in the present case. According to Debtor, because there has been only one lapse in mortgage payments over the thirteen-year term of the loan, which was caused by circumstances beyond Debtor's control, requiring the continuation of conduit payments past the Cure Date[2] would be of no benefit here. The Court disagrees. The purpose underlying L.B.R. C–3.18.17's conduit requirement in cases where greater than a two-month arrearage exists as of the petition-date is manifold. The primary end served by the rule is the insurance of a Chapter 13 debtor's success in making plan payments. The conduit procedure imposed by L.B.R. C–3.18.17 assists debtors with a questionable prepetition payment history in meeting their plan obligations. Debtor, whose prepetition mortgage obligation payments admittedly was in arrears for at least nine—and perhaps as long as fifteen—months certainly would fall within the category of debtors the rule is designed to aid. The conduit requirement also serves a valid systemic interest. By providing an assistive mechanism for debtors who have had a sporadic prepetition payment history, the conduit procedure prevents innumerable motions for relief from stay, dismissal or modification which would otherwise inevitably arise if debtors were left to their own devices in making their mortgage payments. In short, L.B.R. C–3.18.17 serves the salutary policy of facilitating performance under Chapter 13 plans by debtors who have demonstrated a questionable prepetition payment track record. Here, the fact that Debtor's prepetition default was occasioned by health problems and/or other circumstances beyond his control is of no relevance: most Chapter 13 debtors default on their prepetition mortgage obligations due to financial distress engendered by factors beyond their control. Debtor's protestations to the contrary, the facts presented here present no compelling basis for departure from the rule's conduit requirements in this case.

Based upon the foregoing, the Objection to Confirmation of Chapter 13 Plan filed by the Trustee is hereby SUSTAINED. Confirmation of debtor's Chapter 13 plan is hereby DENIED. Debtor is granted twenty (20) days from the date of the entry of this order to take whatever action he deems appropriate to place his plan in a posture for confirmation. Failure to do so will result in dismissal of this case.

IT IS SO ORDERED.

---

2. The logic behind debtor's proposal to cease conduit payments upon cure of the prepetition mortgage arrearage escapes the Court. The conduit requirement of L.B.R. C–3.18.17 is not designed to facilitate the cure of prepetition mortgage arrearages. Rather, it is intended to ensure that payments on long-term obligations treated in accordance with 11 U.S.C. § 1322(b)(5) are regularly maintained by debtors who have had a spotty prepetition payment history. The existence of a greater-than-two-month mortgage arrearage merely signals a case in which the conduit procedure is needed. It stands to reason, then, that cure of the arrearage pursuant to a Chapter 13 plan does not eliminate the need for continued participation by the Trustee in the mortgage payment process.