### In re John R. ROESNER, Debtor.

### No. 88–40671.

United States Bankruptcy Court,
D. Kansas.

April 7, 1993.

Mark J. Dinkel, Salina, KS, for debtor.

Edward J. Nazar of Redmond, Redmond & Nazar, Wichita, KS, for Chapter 12 Standing Trustee.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

John R. Roesner appears by his attorney, Mark J. Dinkel of Salina, Kansas. Edward J. Nazar, of the firm of Redmond, Redmond & Nazar, Wichita, Kansas, is the standing Chapter 12 trustee. He appears as his own attorney.

This proceeding is core under 28 U.S.C. § 157; the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984.

Although debtor's Chapter 12 plan specifying a standing trustee's fee of 6 percent was confirmed in 1989, the trustee now wants to collect a fee of 10 percent on debtor's 1992 plan payment. The debtor objects to the additional 4 percent charge. I find for the debtor for the reasons that follow.

The antagonists have chosen to submit the question on briefs accompanied by a written stipulation rather than by evidence. While the trustee raises the question by a pleading captioned "Motion for Order Clarifying Original Order of Confirmation," the stipulation appended to this opinion provides that his motion should be treated as a "Motion to Modify the Plan for the inclusion of the increase of Trustee fees." (Stipulation of Facts filed August 4, 1992, at 4.) Such agreements are favored and given effect by the courts. *Farrey v. Sanderfoot,* —— U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) (giving effect to parties' agreement about the status of state law). Accordingly, I will treat the motion as one to modify the plan after confirmation under § 1229 of the Code.

The stipulation further reflects that the debtor proposed a series of Chapter 12 plans ending with the Debtor's Third Amended Plan. The original plan dated August 16, 1988, called for a trustee's fee of 10 percent. Each subsequent amended plan stated, "The Debtor shall also pay to the Trustee 6 percent of all plan payments made through the Trustee for Trustee's fees and expenses." [1] (Stipulation of Facts filed August 4, 1992, at 1–2.) This language appears in the Debtor's Third Amended Plan dated January 20, 1989, which was confirmed on April 3, 1989. The parties do not suggest that the Order of Confirmation filed July 12, 1989, alters the meaning of the quoted language.

The stipulation also states that effective January 1, 1992, the Attorney General, after consultation with the United States Trustee, increased the percentage compensation factor for the Chapter 12 standing trustee in Kansas. The increase was from 6 percent to 10 percent under the authority of 28 U.S.C. § 586(e).[2] According to para-

---

1. There are minor differences in the quoted language in each of the plans, such as "shall also pay" and "also shall pay," but these differences are immaterial to the analysis.

2. Section 586(e) of Title 28, United States Code, reads:
 (1) The Attorney General, after consultation with a United States trustee that has appoint-

ed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—
 (A) a *maximum annual compensation* for such individual consisting of—
 (i) an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule; and

graph eight of the stipulation, the United States Trustee for Kansas, or someone on his behalf, notified the debtor of the fee increase by letter dated January 7, 1992.

Many Code sections under Titles 11 and 28 touch on the question presented. The first to note is 28 U.S.C. § 586(b), under which the United States Trustee appoints the Chapter 12 standing trustee. When this is done, the statute commands that the appointed person shall serve in any case filed under Chapter 12. 11 U.S.C. § 1202(a).

■■■ Only the Chapter 12 debtor can file a plan. 11 U.S.C. § 1221. Nevertheless, the standing trustee has a voice in the plan-shaping process. He or she must appear and be heard at any hearing that concerns the value of property, the propriety of confirmation or modification of the plan after confirmation, or the wisdom of the sale of estate property. 11 U.S.C. § 1202(b)(3). Like any party in interest, the standing trustee may object to confirmation of the Chapter 12 plan. 11 U.S.C. § 1224.

■■■ The plan "shall provide for submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for execution of the plan." 11 U.S.C. § 1222(a)(1). The standing trustee has a duty to ensure that the debtor begins making timely payments required by a confirmed plan. 11 U.S.C. § 1202(b)(4). The standing trustee is entitled to collect a percentage fee on payments received through the plan. 11 U.S.C. § 1226(b)(2).[3]

What the standing trustee does with the payments he or she receives from the debtor is spelled out. 11 U.S.C. § 1226(c). The statute states, "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." The introductory phrase in this sentence implies that the payments to creditors can be made by someone other than the standing trustee, as some courts have held. *In re Savage*, 67 B.R. 700 (D.R.I.1986); *In re Citrowske*, 72 B.R. 613 (Bankr.D.Minn.1987); *Matter of Finkbine*, 94 B.R. 461 (Bankr.S.D.Ohio 1988); *In re Mouser*, 99 B.R. 803 (Bankr. S.D.Ohio 1989); *In re Teagardner*, 98 B.R. 318 (Bankr.S.D.Ohio 1989). Other courts have taken the next step by holding that unless the trustee makes the payments to third parties, he or she cannot collect the fee. *In re Burkhart*, 94 B.R. 724 (Bankr. N.D.Fla.1988); *In re Pianowski*, 92 B.R. 225 (Bankr.W.D.Mich.1988); *In re Beard*, 134 B.R. 239 (Bankr.S.D.Ohio 1991).

■■■ Property of the Chapter 12 estate includes pre-petition property (§ 541 property) and post-petition property acquired

---

(ii) the cash value of employment benefits comparable to the employment benefits provided by the United States to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time; and

(B) a percentage fee not to exceed—

(i) in the case of a debtor who is not a family farmer, ten percent; or

(ii) in the case of a debtor who is a family farmer, the sum of—

(I) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,000; and

(II) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,-000;

*based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.*

(2) Such individual shall collect such percentage fee *from all payments received by such individual* under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. *Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund....* (Emphasis added.)

3. Section 1226(b) of Title 11, United States Codes, states: "Before or at the time of each payment to creditors under the plan, there shall be paid—(1) ..., and (2) if a standing trustee appointed under section 1202(d) of this title is serving in the case, the percentage fee fixed for such standing trustee under section 1202(e) of this title." 11 U.S.C. § 1226(b).

The references to § 1202(d) and (e) in § 1226(b)(2) above are apparently a revisor's oversight. In 1986, Congress repealed subsections (c), (d), and (e) of § 1202, but failed to delete the references to them in § 1226(b)(2).

before the case is closed, dismissed, or converted, and earnings from services of the debtor after commencement of the case. 11 U.S.C. § 1207(a). The debtor can remain in possession of property except as stated in the confirmed plan or the order confirming the plan, unless § 1204 applies, i.e., the debtor is removed from possession by order of the court. 11 U.S.C. § 1204(a); 11 U.S.C. § 1207(b). Under these rules, the standing trustee's percentage fee is paid from funds that are property of the bankruptcy estate.

Among the several standards for confirmation of a Chapter 12 plan is the requirement that the debtor must be "able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). Curiously, confirmation binds the debtor, creditors, equity security holders, and general partners of the debtor, but perhaps not the trustee. There is no direct reference to a "trustee" in the Code section covering the effect of confirmation. 11 U.S.C. § 1227(a). Nevertheless, as already noted, the trustee can request post-confirmation modification of the plan to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1229(a)(1).

■ The Code permits a plan to classify claims. 11 U.S.C. § 1222(b)(1). But, is the trustee the holder of "claims of a particular class" so that he is entitled to ask that the plan be modified to increase his percentage fee? Certainly, the plan is express in allowing the trustee a 6 percent fee on all plan payments made through him. Perhaps this expression is enough to deem the trustee's right to a fee to be classified as a claim. But, there is no statutory requirement that the trustee be included in a plan class. And, the trustee is not statutorily named as a party bound by the confirmed plan. Hence, it is not clear that the trustee's right to a percentage fee establishes him as the holder of "claims of a particular class provided for by the plan" with standing to seek modification of the plan as to his fee. Whatever may be the solution to this quandary, it is clear that since the trustee is seeking modification of a con-

firmed plan, he is required to show compliance with § 1222(a), § 1222(b), § 1223(c), and § 1225(a) of the Code. 11 U.S.C. § 1229(b)(1). The effect of this requirement will be discussed later.

Recently, in *In re Schollett*, 980 F.2d 639 (10th Cir.1992), the Tenth Circuit addressed the power of the bankruptcy court to "review the reasonableness" of a Chapter 12 standing trustee's fee. The opinion notes that before enactment of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 ("BAFJA"), most bankruptcy courts held that since they had the power to appoint trustees, they also had the power to review their fees in Chapter 7 and 13 cases. But, the legal environment changed when BAFJA created Chapter 12 and extended the United States Trustee system beyond the original pilot districts created by the Reform Act of 1978. In those districts to which the 1986 Act applied, BAFJA placed the power to appoint standing Chapter 12 and 13 trustees in the United States Trustee and directed the Attorney General to establish the trustees' fees in those districts, subject to statutory limitations.

The District of Wyoming, where *Schollett* arose, was not one of those districts to which the United States Trustee system applied as of BAFJA's effective date, November 11, 1986. Consequently, the Wyoming bankruptcy court, perceiving a need under the new legislation for a standing Chapter 12 trustee, appointed Sharon Dunivent to the position. When the court made this appointment, it fixed Dunivent's fee at the statutory maximum of 10 percent of the payments made through her under confirmed plans.

Later, in August of 1987, when the District of Wyoming was certified to participate in the United States Trustee system, the United States Trustee reappointed Dunivent as standing Chapter 12 trustee. Under this appointment, the Attorney General fixed Dunivent's fee at the same maximum statutory fee of 10 percent of plan payments received, as the bankruptcy court had done when it first appointed her.

The Scholletts filed for Chapter 12 relief on April 15, 1987; the bankruptcy court confirmed their plan on June 26, 1987. The plan proposed to pay through the trustee $30,000.00 per year for five years beginning in August 1988. When the debtors made the first plan payment without also tendering the trustee's 10 percent fee, she refused to distribute the payment to creditors. Over the course of the plan, the trustee's 10 percent fee on annual plan payments totaled $15,000.00. The debtors objected to the $15,000.00 fee as excessive because "the trustee's duties in their case involved nothing more than writing seven checks and would take at most fifteen hours over five years." *Id.* at 641.

On appeal to the district court, Dunivent argued that the statutory scheme had removed the authority of the courts to review trustees' fees. Unconvinced, the district court reduced the trustee's fee from 10 percent to 5 percent of the payments she received. When the case reached the circuit court, it reversed the district court, reasoning that under the legislative changes in 1986, only the Attorney General was empowered to fix the trustee's fees. Hence, under the *Schollett* holding, bankruptcy courts have no power to review percentage fees set by the Attorney General, no matter how unreasonable they may be in an individual case.

The trustee in this matter has filed a supplemental brief claiming that *Schollett* controls here. But, this case and *Schollett* are only superficially similar. Although both involve proposed changes to a trustee's fee, the Scholletts wanted to reduce the trustee's fee as unreasonable. Here, however, the trustee wants to increase his fee because the Attorney General has adjusted it upward by annual exercise of his statutory power to do so.

In both cases, the Attorney General has fixed the fee allowed to the trustee. Initially, in *Schollett*, the bankruptcy court set the fee at 10 percent when it appointed Dunivent as trustee. Later, upon certification of the District of Wyoming, the United States Trustee reappointed the standing trustee, and the Attorney General fixed her fee at the same 10 percent rate. In answer to a contention that the fee set by the bankruptcy court was at issue, not the fee set by the Attorney General, the circuit court noted in footnote 2 that "[T]he relevant fee is that set by the Attorney General." *In re Schollett*, 980 F.2d 639, 642 (10th Cir.1992).

In this case, the Attorney General fixed the 6 percent rate in the first instance, not the court. This 6 percent rate was the amount of the fee at confirmation and at the time the debtors made their first plan payment in 1990 and again in 1991. The trustee now wants to raise the fee on the debtors' 1992 plan payment.

In the circuit's opinion, there are only two oblique references to the contents of the Scholletts' plan provisions covering trustee's fees. The first states that the bankruptcy court's order upholding the 10 percent fee was made " 'not withstanding any language in the plan or order to the contrary.' " *Id.* at 640. The second is in footnote 2 of the opinion where again the court alludes to the language of the bankruptcy court, saying, "Indeed, the bankruptcy court's order confirmed that the United States Trustee's rate of ten percent was to prevail, anything in the plan to the contrary notwithstanding." *Id.* at 642.

These references imply that perhaps the *Schollett* plan called for a 5 percent trustee's fee, or at least a fee less than 10 percent. However, the circuit's opinion fails to mention what was in the plan on the subject of trustee's fees. It fails to indicate that the contents of the plan had any relevance to the question of the court's power to "review" fees. If the Scholletts argued that the fact of confirmation of a plan containing an express fee allowance was important to the decision, the circuit opinion fails to mention it. Rather, the court places the emphasis on when the fee was fixed in relation to the plan payment. It points out that the first plan payment was made long after the fee was fixed and at a time when § 586 of Title 28 applied to the case. The 10 percent rate in *Schollett* was applied to all plan payments beginning with the first, while in this case the debtor

has paid 6 percent on at least two annual plan payments.

The rationale of the *Schollett* opinion is based upon the statutory framework of § 586 of Title 28, without regard for the significance of a confirmed Chapter 12 plan and a series of payments made under its terms. There is no discussion in *Schollett* about the effect of confirmation on the ability of the trustee to increase his fee annually, even though he has agreed to a plan allowing him a percentage fixed by the Attorney General as of the date of the plan. Certainly, the case does not unambiguously rule that a trustee who seeks to increase her fee may do so contrary to the terms of a confirmed plan to which she agreed. To hold this, the case would have had to point out that the plan contained a limitation on the trustee's fee of 5 percent (or some greater percentage less than 10 percent). It would have had to disclose that the Scholletts argued that the trustee was bound by the plan's 5 percent limitation on her fee. And, it would have had to hold that notwithstanding the debtors' argument, the fee set by the Attorney General at 10 percent prevails over the plan limit of 5 percent because the statutory scheme prevents any tampering with the fee by the bankruptcy court. Were these points made, I would have to concede that *Schollett* is controlling here.

But, on its facts, *Schollett* stands only for the proposition that under the statutory scheme, the bankruptcy court is powerless to review and decrease the standing trustee's fee set by the Attorney General when it lacks reasonableness. The case says nothing about whether the bankruptcy court can hold the trustee to fees agreed upon in a confirmed plan when those fees were set by the Attorney General.

In contrast to the Scholletts, John Roesner does not challenge the reasonableness of the trustee's fee or call upon the court to reduce it from 10 percent to 6 percent because it is unreasonable. He is not contesting the propriety of the original rate set by the Attorney General and fixed in the confirmed plan. Rather, it is the trustee who seeks a change—an increase in his fee, although he agreed to the plan containing an express statement that he would receive only 6 percent. I must decide whether the trustee can increase his fee by collecting an additional 4 percent on payments made under such a confirmed plan.

The decision is needed only because the Attorney General has increased the trustee's compensation factor under his annual power to do so. Yet, the Attorney General and the United States Trustee for Kansas have not appeared in this case to present their positions or to suggest the basis for the Attorney General's annual adjustment. That is, when the Attorney General decided to increase the percentage fee, did he do so because he looked at the total amount of payments coming due under old, already confirmed plans? Did he determine that payments coming due under already confirmed plans had to be included in the computation base using a 10 percent fee in order to generate sufficient funds to run the system? Or, did he base his decision solely on payment projections due under plans to be confirmed in the future? Nothing has been presented to show that the administrative scheme will be threatened by a decision adverse to the trustee.

■ There are both practical and doctrinal difficulties underlying the trustee's position. To confirm a Chapter 12 plan, I must be satisfied that the debtor is "able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). I would have no difficulty making this decision if the original plan had stated that the trustee's fee would increase by some specific amount or percentage in future years. I would factor in future increases when deciding whether the debtor could make the proposed plan payments. But, if the trustee agreed in the plan to a fee of 6 percent and then proposed to increase it later whenever the Attorney General said he could, I would have difficulty deciding whether the debtor could make the future plan payments (including the trustee's fee) and whether the plan should be confirmed. Even though the plan specified a 6 percent trustee's fee, to decide feasibility I would have to ignore

its terms and assume that the fee would increase to the 10 percent maximum, or some other guessed-at number between 6 and 10, at the beginning of each future plan year.[4] In effect, I would be rewriting the plan. But, the scheme of the Code does not make me a plan writer. Under rehabilitation Chapters 9, 11, 12 or 13, my function is only to approve or disapprove suggested plans by measuring them against the Code's confirmation standards for the chapter involved. As the legislative history under Chapter 11 states, "The court may not rewrite the plan." 11 U.S.C. § 1129(b). H.R.Rep. No. 595, 95th Cong., 1st Sess. at 414 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6370.

With the exception of the Chapter 13 case of *Matter of Baldwin*, 97 B.R. 965 (Bankr.N.D.Ind.1989), the cases I have examined dealing with the court's power to alter trustees' fees have presented situations similar to *Schollett*. They involve debtors who were objecting to the reasonableness of the percentage fee because of their financial circumstances.

*Baldwin* is more like this case than are the "reasonableness" cases. Baldwin's original confirmed Chapter 13 plan provided that the trustee would receive a 3.5 percent fee on mortgage payments he made to a mortgage lender on behalf of the debtor. He was to receive 10 percent of all other payments he made on behalf of the debtor. After the original plan was confirmed, but before the debtor filed his motion to modify, the trustee changed his fee to 9.5 percent on all funds passing through his hands.

The debtor moved to modify the confirmed Chapter 13 plan by changing the treatment of two unsecured creditors and adding three more. In addition, the debtor proposed to change the plan so that the trustee would no longer pay the mortgage payment he had been making under the plan. The debtor executed a wage deduction order directing his employer to pay the mortgage lender. The debtor then incorporated the direct payment arrangement into the modified plan. Ostensibly, the debtor's motion to modify did not alter the plan as to the amount of the trustee's percentage fee, but its effect was to deprive the trustee of his fee on the mortgage payment. The trustee objected to the modification, contending that 9.5 percent should be paid on the mortgage payment as well as on all other funds passing through him.

The court found that modification should be granted with the employer as disbursing agent on the mortgage debt, and that not only should the trustee's objection be overruled, but he should get no fee on the funds paid by the employer. In the course of the opinion, the court found that the confirmed plan was *res judicata* as it applied to the rights of the trustee. However, this conclusion is suspect since the modification did have the effect of changing the total fee that the trustee received, but not the percentage fee. Unfortunately, while *Baldwin* is factually closer to this case than to the "reasonableness" cases, it does not solve the problem presented here.

▬ As mentioned in the beginning, the trustee's motion is to be treated as a "Motion to Modify the Plan for the inclusion of the increase of trustee fees." (Stipulation of Facts filed August 4, 1992, at 4.) By stipulating that the trustee's motion is to be treated as one to modify the plan post-confirmation, the parties recognize the possibility that only an order granting such a motion will truly bind the debtor. When a Chapter 12 or 13 plan is confirmed and the debtor completes the payments according to the plan, "the court shall grant the debtor a discharge...." 11 U.S.C. § 1228(a), § 1328(a). If the original confirmed plan remains unmodified, the debtor can complete the plan payments called for and ask for a discharge. Perhaps the court would have to grant the discharge absent bad faith. This could happen if the court were merely to order that the trustee's fee should be increased without embodying the order within a confirmation order modify-

---

4. Since the Attorney General has now fixed the Kansas trustee's percentage fee at the statutory 10 percent maximum, this scenario can no long-er occur unless Congress increases the statutory maximum beyond 10 percent.

ing the plan. The debtor might disregard such a non-confirmation order to pay an increased trustee's fee, but complete the payments due under the original confirmed plan. Then, he might insist that he is entitled to a discharge notwithstanding the non-confirmation order increasing the trustee's fee. To avoid this possibility, any increase in payments to the trustee should be made in an order granting modification of an already confirmed plan. Such an order is itself the confirmation of a modified plan, the payments under which the debtor must complete before becoming eligible for a discharge. 11 U.S.C. § 1228(a).

■ The trustee has the right to modify the plan "to increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1229. But, under this Code language, the trustee's right to request altered payments is limited to payments due on claims classified under the plan. Assuming (without deciding) that the trustee is the holder of such a classified claim because the plan clearly entitles him to a 6 percent fee on payments he distributes, he has presented nothing to justify granting his motion to modify the confirmed plan by increasing his agreed percentage fee. Yet, as the party requesting modification of a confirmed Chapter 12 plan, he has the burden of proof to show that modification is proper. *In re Pearson*, 96 B.R. 990 (Bankr. D.S.D.1989).

To sustain a motion to modify a plan after confirmation, the movant must show that the modified plan complies with §§ 1222(a), 1222(b), 1223(c), and 1225(a) of Title 11. 11 U.S.C. § 1229(b). Subsection (6) of § 1225(a) requires a showing that under the modified plan, "the debtor will be able to make all payments under the plan and to comply with the plan." The trustee has presented nothing to show that the debtor will be able to make the plan payments if the percentage fee is increased by 4 percent of the 1992 payment. Moreover, the trustee has not informed me of the 1992 plan payment amount against which the proposed increase in percentage fee is to apply. The stipulation is silent on the subject. Without this information, I cannot tell if the proposed modified plan meets the statutory tests for confirmation.

In light of these findings, and the fact that the trustee has agreed to a 6 percent fee that was fixed by the Attorney General as of the time the plan was originally confirmed, I rule that the motion to modify is denied and that the confirmed plan stands, including the 6 percent fee to the trustee on all payments received by him for distribution under the confirmed plan.

■ Additionally, I believe that the following cases, holding that the doctrine of *res judicata* applies to confirmed plans, supply additional support for my ruling. *In re Bonanno*, 78 B.R. 52 (Bankr.E.D.Pa. 1987); *Matter of Baldwin*, 97 B.R. 965 (Bankr.N.D.Ind.1989); *In re Wickersheim*, 107 B.R. 177 (Bankr.E.D.Wisc.1989); *In re Martin*, 130 B.R. 951 (Bankr.N.D.Iowa 1991).

While there may be some question whether the Chapter 12 standing trustee is (1) a fee creditor (claim holder) under § 1227, which spells out the effect of confirmation of a plan, (2) an administrative expense claimant, or (3) the holder of some other fee status, the universally recognized doctrine of *res judicata* is broad enough to bind the trustee who has agreed to a fee certain by failing to object to confirmation of the Chapter 12 plan.

Finally, I cannot stifle a comment on a point of advocacy. The trustee states in his brief:

A Chapter 12 debtor knows the statutory scheme of Chapter 12 and is presumed to know that 28 U.S.C. § 586 allows for periodic yearly adjustments in the trustee fees. The Chapter 12 debtor knows that a fee will be required to be paid in order to avail itself (sic) of the protections of Chapter 12. The debtor's challenge to the appropriateness of the trustee's 10% charge on all payments made under the plan should not be recognized....

(Brief In Support of Trustee's Motion for Order Clarifying Original Order of Confirmation filed November 5, 1992, at 7.) (Citation omitted.) By suggesting this syllo-

gism, when he fixed the percentage rate at whatever the Attorney General ordered in the future, the trustee displays an amazing ability to ignore the obvious. Who should be most aware of the nuances of a Title 28 statute dealing with the appointment and compensation of standing trustees, the Title 11 debtor and his attorney or the standing trustee (also an attorney) who is appointed and paid under the statute?

 I hold that the debtor, the creditors, and the trustee in this case are bound by the confirmed plan. To hold otherwise would greatly frustrate the reasonable expectations of the debtor and the creditors and undercut the finality of the confirmed plan upon which they are entitled to rely.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

### APPENDIX

### STIPULATIONS

COMES NOW the Chapter 12 Standing Trustee, Edward J. Nazar of Redmond, Redmond & Nazar and Mark J. Dinkel, Attorney for Debtors hereby submits (sic) the following stipulations.

1. That on August 18, 1988, the debtors chapter 12 plan dated August 16, 1988, was filed with the Court. The plan lists the costs of administration as follows:

ARTICLE VI—Classification and Treatment of Claims

A. *Class 1.* Costs of Administration. The debtor shall pay $200.00 in Trustee's fees and expenses upon confirmation. The Debtor also shall pay to the Trustee 10 percent of all plan payments made through the Trustee, being 5 percent for Trustee's fees and 5 percent for Trustee's expenses.

2. That on December 16, 1988, the Debtors' Amended Chapter 12 Plan dated December 16, 1988, was filed with the Court. The amended plan lists the costs of administration as follows:

ARTICLE VI—Classification and Treatment of Claims

A. *Class 1.* Costs of Administration. The Debtor shall pay $200.00 in Trustee's fee and expenses upon confirmation. The Debtor shall also pay to the Trustee 6 percent of all plan payments made through the Trustee for Trustee's fees and expenses.

3. That on January 20, 1989, the Debtor's Seconded Amended Chapter 12 Plan dated January 20, 1989 was filed with the Court. The second amended plan lists the costs of administration as follows:

ARTICLE VII—Classification and Treatment of Claims

A. *Class 1.* Costs of Administration. The Debtor shall pay $200.00 in Trustee's fee and expenses upon confirmation. The debtor also shall pay to the Trustee 6 percent of all plan payments made through the Trustee for Trustee's fees and expenses.

4. That on March 13, 1989, the Debtor's Third Amended Chapter 12 Plan Dated January 20, 1989 (sic) was filed with the Court. The third amended plan lists the costs of administration as follows:

ARTICLE VII—Classification and Treatment of Claims

A. *Class 1.* Costs of Administration. The debtor shall pay $200.00 in Trustee's fee and expenses upon confirmation. The Debtor also shall pay to the Trustee 6 percent of all plan payments made through the Trustee for Trustee's fees and expenses.

5. That on July 12, 1989, the Order of Confirmation was filed with the Court. The Order does not state anything about the trustee fees.

6. That in December, 1991, the United States Trustee proposed to increase the standing chapter 12 trustee's fee from 6% to 10%. On December 12, 1991 a letter was sent to all debtor's counsel alerting them of the fact that it was highly likely that the percentage compensation will increase effective January 1, 1992. That upon receiv-

ing official notification from the U.S. Trustee, we will send notice to you and your clients.

7. Pursuant to 28 U.S.C. § 586(e), the Attorney General, after consultation with the U.S. Trustee increased the percentage compensation factor from 6% to 10% effective January 1, 1992.

8. That on January 7, 1992 a letter was sent to debtors and debtors' counsel regarding the fee increase.

9. Pursuant to 11 U.S.C. § 1229 the standing trustee filed a Motion for Order Clarifying Original Order of Confirmation. In this motion the Trustee requested the Court for an order clarifying the original order and finding that the Trustee's rate of compensation is 10% effective January 1, 1992 through December 31, 1992, under all payments made under the plan. In the event that any plan payments were made in 1992 under the Trustee's compensation of 6%, the Trustee pray that he be empowered and directed to collect the additional compensation from the debtor.

10. The debtor objected to the Motion for Clarification. In support of their objection, debtor states:

A. The Debtor's Third Amended Plan provides for a trustee commission of six percent.

B. The Debtor's Third Amended Plan was confirmed by the Court on April 3, 1989, without objection to or modification of the provision for a trustee's commission of six percent.

C. The Debtor's Third Amended Plan provides for a trustee's fee of six percent of *all* plan payments made through the trustee.

D. The trustee's fee provided for by the plan cannot be modified after plan confirmation. See 11 U.S.C. § 1229.

11. The rate increase would be applied to all payments for 1992.

12. The Motion for Order Clarifying Original Order of Confirmation should be treated as a Motion to Modify the Plan for the inclusion of the increase of Trustee fees.

RESPECTFULLY SUBMITTED.

Redmond, Redmond & Nazar
200 West Douglas, 9th Floor
Wichita, Kansas 67202
(316) 262–8361
By /s/ Edward J. Nazar
Edward J. Nazar, S.C. No. 9845
Standing Chapter 12 Trustee

Mark J. Dinkel
2021 Lewis Street
Salina, Kansas 67401
(913) 825–7726
By /s/ Mark J. Dinkel
Mark J. Dinkel, S.C. No. 11616
Attorney for Debtor